THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN KELLY, Appellant.

The provision of the Code of Criminal Procedure (§ 528, as amended by Chap. 493, Laws of 1887), authorizing this court, on appeal, in a criminal action "when the judgment is of death" to order a new trial if "satisfied that the verdict was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below," does not authorize a review of findings of fact of a jury, founded on sufficient evidence, or a reversal simply because of a difference of opinion on the facts between the court and the jury; it simply invests the court with power to order a new trial where, upon a consideration of the whole case, it is manifest injustice has been done, although the question has not been properly raised by exceptions.

After a witness for the prosecution, on the trial of an indictment for murder, who had witnessed the homicide, had testified to the circumstances attending it, and had shown in his testimony a disposition to favor the prisoner, the district attorney, with the avowed purpose of refreshing his recollection, asked him if he had not previously testified to certain other facts specified. The witness admitted that he had so testified, and upon being asked if it was true, answered that it was. *Held*, that the method pursued to refresh the witnesses' recollection was proper.

It is not sufficient to excuse a person from the consequences of a fatal assault upon another, that he was provoked thereto by an angry controversy of words alone, however aggravating, and when the parties are unequal in strength, and the assaulting party being the stronger, and having no reason to apprehend physical injury from the other, uses a dangerous weapon, the question whether it was used with homicidal intent is one of fact for the jury.

(Argued March 27, 1889; decided April 16, 1889.)

The following are extracts from the opinion herein:

" The defendant was indicted for the crime of murder in the first degree for killing one Eleanor O'Shea, by striking her on the head with a hammer, at the town of Geneva in the county of Ontario, on the 6th day of November, 1888. At a trial in the Court of Oyer and Terminer, held in said county in December, 1888, the defendant was convicted of the crime charged, and, in pursuance of the provisions of the Code of Criminal Procedure as amended by chapter 493 of the Laws of 1887, has appealed directly to this court from the judgment entered upon his conviction. Upon such an appeal we are required to examine the whole case and determine whether, in our opinion, ' the verdict was against the weight of evidence, or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below.'

" We do not think that this provision was intended to authorize this court to review findings of fact, founded upon sufficient evidence, made by the jury, or to reverse judgments simply because of a difference of opinion on the facts between this court and the jury; but it was intended to invest the court with the power of ordering a new trial in cases where, upon a consideration of the whole case, it is manifest that injustice has been done, although the question has not been properly raised by exceptions in the court below. (*People* v. *Cignarale*, 110 N. Y. 23.)

" This provision undoubtedly gives great latitude of authority to the court in granting new trials to convicted offenders, but it is an authority which must be exercised under the restraint of settled rules and in accordance with established principles of law regulating and defining the duties of appellate tribunals in reviewing the judgments of trial courts. It

is claimed that a consideration of the evidence shows a lack of proof of that premediation and deliberation in the commission of the offense, which is required by the statute to sustain a conviction.

"There is no serious question in the case but that Eleanor O'Shea came to her death in consequence of a blow inflicted with an iron hammer upon her head by John Kelly, or but that the blow was intentionally given for the purpose of inflicting serious bodily injury upon said O'Shea. The principal question in the case is the determination of the particular intent with which the defendant struck the blow. This can be ascertained only by an examination of the facts proved on the trial."

After a full consideration of the testimony, the opinion continues:

"Upon this evidence it was, we think, a fair question for the jury to determine whether the death of O'Shea was produced by that degree of deliberation and premeditation which rendered it murder in the first degree. So far as this case is concerned the inquiry is, whether the evidence established the fact that Eleanor O'Shea was killed from a deliberate and premeditated design to effect her death. (Penal Code, § 183.) If she was, then the defendant was guilty of murder in the first degree and was properly convicted of the offense. It is not sufficient to excuse a person from the consequences of a fatal assault upon another, that he has been provoked thereto by an angry controversy of words alone, however aggravating they may have been; but when such language induces a personal conflict of strength between parties of comparatively equal ability to inflict injury, the seizure of a dangerous weapon, accidentally near, by one of the parties, and a blow given in the heat of passion, might be regarded by a jury as excusable. This, however, is not the rule when the parties are unequal in strength and the assaulting party has no reason to apprehend physical injury from the other. Here the violence was initiated by the defendant, and, although he had no reason to anticipate adequate resistance, it was followed up and continued after his adversary had been silenced and disarmed.

"That there was abundant evidence of deliberation and premeditation in striking the blow which caused death we do not consider a debatable question in the case, but whether it was delivered with homicidal intent is a question about which some difference of opinion might exist. We think, however, upon the whole evidence, that the jury, who saw the parties and their witnesses and heard their evidence and could judge of their intelligence and credibility, had better opportunities for arriving at a correct conclusion in respect to the question than an appellate tribunal possesses.

"The evidence that the affray had apparently terminated and O'Shea retired to the corner of the room most remote from Kelly, with an evident intent to avoid him, and that he then sought her out, after an opportunity to reflect upon his course of action, with the obvious purpose of continuing the affray, armed with a new and dangerous weapon, is very persuasive proof of a deliberate and determined purpose on his part. (*People* v. *Sullivan*, 7 N. Y. 396.) It is obvious that Kelly never considered himself in danger of bodily harm from O'Shea; he had silenced her tongue and she showed no disposition to renew the controversy, and all apparent reason for continuing it had ceased except a purpose on his part to inflict punishment upon her. He then, apparently, armed himself with the hammer, a dangerous if not deadly weapon, and proceeded across the room to attack a defenseless and unresisting woman, not possibly with the intention of striking her in the first instance, but evidently with a view of compelling, in some way, a retraction of her charges against him. In the event that she refused, it was a natural inference, from the evidence, that he intended to strike her on the head, a vulnerable and vital spot, with the consequences which would naturally follow from such a blow. It is not possible that he could have supposed it would be harmless, and it is difficult to see how he could have expected it would be otherwise than fatal. The indifference with which he witnessed her struggle to reach the pantry and his peremptory disposition of Mahar for the night, thus removing the only person from the house who was friendly to the deceased and capable and willing to render assistance in

her extremity, showed cruel disposition and a reckless disregard. of human life, and bore strongly upon the intent with which the blow was inflicted. That he considered the provocation given to him by O'Shea a sufficient reason for killing a human being was ostentatiously avowed by him immediately after the affray, and might fairly have been considered by the jury as an attempted justification of consequences which he then apprehended and probably premeditated. The hindrance which O'Shea had for a long time presented to the continuance of his illict intercourse with his paramour furnishes a motive for the crime, which might have been considered by the jury sufficiently strong to induce him to attempt the life of the deceased.

"We are, therefore, on the whole case, of the opinion that. the evidence supports the verdict of the jury, and that there is no sufficient reason in the facts of the case to authorize the conclusion that injustice has been done the defendant by the judgment appealed from.

"The only other point made by the appellant of any import-ance is that raised by the objection to questions put to the witness Mahar by the People respecting testimony previously given by him before the committing magistrate and the grand jury. Mahar had omitted to testify in detail to the movements of Kelly between the time when the deceased returned to the kitchen and the infliction of the fatal blow. With the obvious and avowed purpose of refreshing his recollection, the district attorney asked whether he had not previously sworn that Kelly moved coolly across from the north-east to the south-west corner of the room where O'Shea stood ; and, also, whether Kelly did not then address her in a low and quiet tone of voice. The witness admitted that he so testified, and, upon the further question as to whether that was the fact, he answered that it was. This was certainly quite material evidence, and, if it was true, was competent on the part of the People. The fact that he omitted to testify to it on his direct-examination must be ascribed either to his forgetfulness or a disposition to befriend the accused by its suppression. He had given no evidence conflicting with this statement, and it tended in no

degree to contradict his testimony. The manner in which it was drawn out might affect the credibility of the witness with the jury, but, having affirmed the truth of the facts aside from his admissions as to his testimony on the previous occasion, it was the province of the jury to give such credit to his evidence as it was entitled to.

"We are of the opinion, within the rule laid down in *Bullard* v. *Pearsall* (53 N. Y. 230), that it was proper for the People to refresh the recollection of the witness in the manner pursued in this case."

*Edwin Hicks* for appellant.

*Frank Rice* for respondent.

RUGER, Ch. J., reads for affirmance.
All concur.
Judgment affirmed.