## Court of Appeals.

*December*, 1889.

## PEOPLE *v.* STONE.

### Murder.—Alibi.—Charge.

On the trial of the prisoner for murder, three witnesses who were well acquainted with prisoner, identified him as the person whom they saw commit the homicide by shooting the deceased, at about a quarter before twelve at night. Two of the witnesses testified substantially that, a short time before the murder, on the same evening, defendant bought a pistol and box of cartridges at a store a few blocks from the place of the murder. When the prisoner was arrested, some two hours after the crime, by an officer, and before being informed of the charge against him, he asked : " Is the Dutchman much hurt ?" The defendant claimed that at the time of the murder he was about 1⅝ miles distant from the place, at the race-course, where, as he testified, he had gone about nine o'clock to sleep with his horses, he being a jockey; that finding the stable locked he lay down on a bench and went to sleep, but awaking about 11 o'clock, he concluded to go home, met two acquaintances and went with them to a hotel, bought two bottles of whiskey, and returned to the place where the officer found him, and arrested him. His two companions corroborated his evidence as to his whereabouts from 11 o'clock, but there was no corroboration of his evidence as to where he was from 9 to 11. Defendant was corroborated by two more witnesses as to his coming to the hotel and getting the two bottles of whiskey at about half past eleven. As to his whereabouts from 12 o'clock to 2 o'clock, the evidence of the defendant was supported by the testimony of only one witness. *Held*, that upon this testimony a verdict of guilty was not against the weight of evidence.

The trial judge charged the jury that " an alibi when established to the satisfaction of the jury is as conclusive a defense as can possibly be interposed in a criminal case. It need not be established beyond a reasonable doubt, but it should be established

to the satisfaction of the jury." The court had already charged, "If there is, in this case, a reasonable doubt, it will be your duty to acquit the defendant," but, "If on the whole evidence there is not a reasonable doubt, it will be your duty to convict the defendant." The defendant's counsel excepted to the remark of the judge that the alibi should be established to the satisfaction of the jury. He requested the court to charge in these words : "That if, taking the whole case together, taking the evidence for the prosecution and the evidence respecting the alibi, they have any reasonable doubt of the guilt of the prisoner, they must acquit him." The court then replied, "I have so charged already." *Held*, that the charge was not erroneous.

Appeal by defendant, James Stone, from a judgment entered in the Court of Sessions of Kings County, upon a conviction of murder in the first degree.

The facts fully appear in the opinion of the Court of Appeals.

*Charles J. Patterson,* for defendant, appellant.

*James W. Ridgeway,* district attorney, for the people, respondents.

RUGER, Ch. J.—The appeal in this case involving, as it does, the life of a human being, presents the gravest question which can occupy the attention of a judicial tribunal, and therefore demands, and should receive, the most careful and deliberate consideration before a final determination shall be pronounced. In view of the duty thus imposed upon us, we have patiently and carefully read the evidence and the proceedings on the trial with a desire to discover such evidence of the defendant's innocence of the crime charged against him as would enable us, in the discharge of our judicial obligations, to relieve him from the penalty imposed by the judgment appealed from, but we have been unable to find any sufficient ground for so doing. The sole question litigated on the trial, and now presented to us for

decision, is whether the defendant is the person who murdered Henry Miller. That he was murdered by a wound received from a pistol shot at the hands of some colored person in Steinzig's Hotel, at Coney Island, on the night of June 21, 1888, is undisputed. It is also established by uncontroverted evidence that the crime was committed about 11:45 P. M., with deliberation and premeditation, by a man standing in the front of the bar, and shooting over it at Miller, who was engaged in his customary occupation as a bar-tender behind it, and received the bullet in his body, from which he died within two minutes, uttering only the words, "I am shot." Was the defendant the person who fired the pistol? This is the sole question, and for its determination we are required, under the provisions of chapter 493 of the Laws of 1887, to examine the whole case, and decide whether, in our judgment, "the verdict was against the weight of evidence, or against law, or that justice requires a new trial."

The rules which should govern this court in the exercise of the jurisdiction conferred by the statute referred to were stated in the case of People *v.* Cignarale, 110 *N. Y.* 26; 6 *N. Y. Crim. Rep.* 82, by Judge ANDREWS. He says : " In determining whether, in a case brought to this court under the statute of 1887, a new trial should be granted on the merits, this court is bound by the settled rules governing appellate courts possessing and exercising this jurisdiction. It is a cardinal principle in our jurisdiction that the jury is the ultimate tribunal for the investigation and determination of questions of fact. It is no more the province of an appellate court than of the court of original instance to determine controverted questions of fact arising upon conflicting evidence. Neither can lawfully usurp the appropriate function of the jury, and neither can substitute its own judgment for that of the jury, where the facts are reasonably capable of diverse or opposing inferences."

Tested by these rules, we do not think the evidence in

the case is such as would justify this court in granting a new trial upon the ground that the defendant was not sufficiently identified as the person who fired the shot that resulted in Miller's death. The undisputed evidence showed that the defendant was, and for a long time had been, engaged in the occupation of riding horses in races, generally at the race-tracks in the vicinity of Coney Island; that he was a single man, and resided at Coney Island. At the time of the murder, and for several years previous thereto, he lived in a house near Steinzig's Hotel, and was well known to its occupants and many other persons in that vicinity. About 7 o'clock on the evening in question he was at his house, and requested a colored woman there to go and get a pitcher of beer. He gave the woman a bill, and she departed on her errand, going to Steinzig's, and returning in a short time with the beer and 92 cents in change. On her handing the money to Stone, he asked what that was, and she answered that it was his change. He replied: "I gave you a five-dollar bill;" and told her to go back and get the change. The woman and Stone then went to the hotel, and saw the bar-tender, upon which the woman said to him, "That was a five-dollar bill I gave you." He said he did not know, and went to the drawer, and, opening it, said, "Sure, it is five dollars;" and saying, "You will get your change," counted it out, and Stone took it, and he and the woman departed. Stone admits that he was at his house until about 9 o'clock that evening, when he claims to have left there, for Sheepshead Bay race-track, not returning until about 2 o'clock the next morning. It was proved by Mrs. Steinzig that she was present when Stone and the woman came to get the change corrected, and that Stone scolded Miller, and said, "You beat me out of money;" and, after Miller counted the change, said, "I'll fix you for that."

There were practically three eye-witnesses to the murder, viz., Steinzig, his wife, and one Farrell. All of these persons had frequently seen Stone before, and were acquainted with him, and each of them, after full opportunity of ob-

servation at the time of the murder, and thereafter upon his arrest, identified him as the person who fired the fatal shot. Steinzig testifies that he was in the bar-room about a quarter before 12, and a colored man came in and called for a drink; that while Miller was helping him, the defendant, Stone, and another colored man, taller than Stone, came in, and went up to the bar opposite where Miller was serving the first customer. The man who first came in took his drink, and left. Immediately thereafter Stone said to Miller, "God damn son of bitch," and raised his pistol, and fired over the counter at Miller. Miller advanced to the witness, saying, "I am shot," and fell into his arms. Stone, with his comrade, immediately ran away, and was arrested about two hours thereafter, near his own house, on the same street. Mrs. Steinzig testifies that she sat on the porch or piazza, in front of the bar-room, and that Stone and his companion, when they came into the house, passed immediately before her; that she saw Stone, and fully recognized him; that he went into the hotel, and soon thereafter she got up and passed through the bar-room; that as she went through she saw Stone again and his companion standing in front of the counter opposite Miller, and soon after she returned she heard the pistol fired, when she returned into the bar-room, and found her husband holding Miller, and the blood was pouring out of him. Steinzig said: "Miller is shot; that little nigger fellow shot him."

Farrell occupied the house contiguous to Steinzig's, and testifies that he was washing off his stoop with a hose when he heard loud talking in Steinzig's bar-room; that from the place where he stood he could look into the bar-room through a window, and see the bar and persons standing before it; that he saw Stone and one Merritt in front of the bar, and Miller behind it; that Stone had a pistol in his right hand, and exclaimed, "You Dutch son of a bitch, I'll kill you," and immediately fired the pistol. Stone and Merritt then ran away. Farrell immediately went to Steinzig's, and, going into the bar-room, saw Miller lying on the

floor bleeding from his mouth and nose. Miller died soon after Farrell got there, and Farrell then went into the street, and gave the alarm, hallooing, " Police !" The police arrived there almost immediately after the murder was committed, and, after informing themselves of the circumstances, went in pursuit of the defendant. They found him in the street a few hundred feet from Steinzig's, in company with several other colored men, about two hours after the murder. Two witnesses testified, substantially, that Stone bought a pistol and a box of cartridges at a store a few blocks from the place of the murder, about 8 o'clock in the evening, but that after making the bargain he concluded not to take them. About 11 o'clock the same night, however, he returned to the store, and stated that he had changed his mind, and would take the pistol, and it was then delivered to him, with the cartridges, and he took them away with him. When Stone was arrested, and before he had been informed of the charge against him, he said to the officer, " Is the Dutchman much hurt ?" indicating an inexplicable consciousness of the commission of the murder, if he did not commit it.

This comprises the substance of the direct evidence given for the prosecution on the trial. Nothing appeared in evidence tending to show that these witnesses were dishonest, or hostile to the defendant, or had any motive to misstate the circumstances testified to by them. Steinzig and his wife were Germans, obviously imperfectly acquainted with the English language, and any discrepancies or imperfections in the mode of giving their testimony was, manifestly, ascribable to the difficulty they had in communicating their ideas through the medium of an unfamiliar language. Each of these witnesses testified to an acquaintance with the defendant for some time previous to the murder, and stated positively and unqualifiedly that Stone was the man referred to in their testimony as having fired the pistol. It cannot be disputed but that a strong case was made against the defendant, and one which, in the absence,

of contradictory evidence, rendered it morally certain that Stone was the man who fired the pistol at Miller. The defense attempted to be made was an *alibi*. The defendant endeavored to show that at the time the murder was committed he was at Sheepshead Bay, about one and five-eighths miles distant from Steinzig's Hotel. The proof showed that the distance between these places could not be traversed, by a man walking, inside of about 25 minutes, and it was assumed on the trial that if Stone was at Sheepshead Bay at half past 11 o'clock that night he could not well have been at Steinzig's at a quarter to 12, when the murder was committed. Stone was sworn in his own behalf, and testified that, after having the difficulty with Miller about the change at 7 o'clock, he remained at his home until about 9 o'clock; that he then started to go to Sheepshead Bay to sleep at the stables, so as to be ready to exercise his horses early in the morning; that when he arrived at the Bay he found the place where he was accustomed to sleep locked up, and no one there to open it; that he then went to the stables, and lay down on a bench, and fell asleep; that he woke up soon after 11 o'clock, and abandoned the idea of staying at the race-track all night, and concluded to go home; that he walked to the outer gate of the race-track, and there met two of his associates,—one Hedrick and Urell,—and proposed to go to one Nun's, a hotel near the gate, and get some liquor; that he and Hedrick went to Nun's, and roused them up, finding Mrs. Nun and her brother-in-law in charge, and obtained from them two bottles of liquor, with which they returned to the gate where they had left Urell; that soon after he and Hedrick started to return to the beach, where he was arrested about 2 o'clock, within 200 feet of his house. He denied shooting the pistol at Miller, or being present on that occasion, or that he bought a pistol that night, or that he asked the officer arresting him, "Is the Dutchman much hurt?" Stone is substantially corroborated in his testimony by Hedrick and Urell, and also by Mrs. Nun and her brother-in-law, as to his meeting these several per-

sons at the house named by him. Mrs. Nun states that Stone and Hedrick came to her place about half past 11; that she sat on the stairs, near the front door, while they were there, with a clock in one hand and a lamp in the other; and that Stone and Hedrick stood on the stoop near the door, and that she saw and recognized them.

The evidence for the defense leaves Stone's history of his movements from 9 o'clock in the evening until after 11 wholly uncorroborated, and from 12 to 2 supported only by Hedrick, whose narration of the mode of their employment during this time is quite meager and unsatisfactory. There would also seem to be no sufficient explanation of Stone's change of mind in respect to the place where he should sleep that night. It was proved by one witness for the prosecution that Stone was at Cullen's Hotel, a place about two minutes' walk from Steinzig's, with two colored men, at 10 minutes past 11 that night, and that they drank together; and by another that he was seen in the street about half past 10 o'clock, not far from Cullen's, and the witness knew him, and had a conversation with him. It was also proved by an old colored woman that Stone was at his house at about 11 o'clock that night. Assuming that the witnesses were not mistaken in their estimates of the time at which the respective transactions testified to by them took place, it is obvious that one side or the other has testified falsely. It is quite impossible to reconcile the various statements of all the witnesses, and it became necessary to determine who was to be believed, under all of the circumstances of the case, and this was peculiarly the province of the jury to decide. The witnesses sworn were all competent to give evidence in the case, and testified only to those facts which were material to the issues tried. No derogatory or discrediting circumstances were shown on the trial which authorized an appellate court to strike out or disregard the testimony of any of the witnesses testifying either for the prosecution or defense, and such as were proved went simply to the credit of the witnesses, and not to their competency, and

a case was thus presented on the trial which required some tribunal to determine the question of veracity. It must be conceded that many of the witnesses on both sides were apparently unintelligent and illiterate, and were engaged in employments that brought them in connection with the idle and vicious. Evidence collected from such sources is not as reliable as courts and juries naturally desire in a case of this importance; but it must also be recollected that the history of a crime can generally be learned only from the lips of those who are the associates and companions of the criminal classes. It affords no reason why crimes should be permitted to go unpunished that the proof against the guilty parties is made out wholly or in part from the testimony of those whose characters and reputations have been soiled by their habits and associations. If such a case is made as satisfies a jury, beyond a reasonable doubt, that the guilty parties have been discovered and identified, it is their duty to render the verdict which the evidence authorizes. We have not undertaken to relate the evidence in this case in detail, or state all of the circumstances bearing upon the commission of the crime or the credibility of the witnesses, but have assumed to give only the prominent facts, with a view of showing generally the nature of the questions presented to the jury for consideration. It seems to us to be quite obvious, from our examination of the case, that the verdict of the jury was not against the weight of evidence, and that there is no sufficient reason to doubt that substantial justice has been done the defendant upon the merits.

No exceptions to evidence are presented that are worthy of serious attention, and but one exception to the charge was taken. The trial judge had instructed the jury,—in a charge which was exceptionally unobjectionable, unless the portion hereinafter referred to can be said to be otherwise,—among other things, that "an *alibi*, when established to the satisfaction of the jury, is as conclusive a defense as can possibly be interposed in a criminal case; it need not be established beyond a reasonable doubt, but it should be established to

the satisfaction of the jury." It is urged that this charge had a tendency to deprive the defendant of the benefit of a reasonable doubt arising upon the whole evidence. The court had charged that " if there is in this case a reasonable doubt it will be your duty to acquit the defendant," but " if upon the whole evidence there is not a reasonable doubt it will be your duty to convict the defendant ;" and, when the defendant's counsel excepted to the remark of the judge that the *alibi* " should be established to the satisfaction of the jury," he requested the court to charge in these words: " That if, taking the whole case altogether,—taking the evidence for the prosecution and the evidence respecting the *alibi*,—they have any reasonable doubt of the guilt of the prisoner, they must acquit him." The court then replied: " I have so charged already." This was quite equivalent to saying that his intention on the whole charge was to so instruct the jury. It seems to us, if the jury could have misunderstood the charge, in the respect referred to, that this deliberate adoption by the court, upon the request of the prisoner's counsel, of the correct rule, must have effectually removed any erroneous impression which his previous remark might have made upon their minds. A very similar statement was made in the charge in Brotherton's Case, 75 *N. Y.* 163, and this court held that the whole charge, taken together, failed to show any error. Here, as there, we are of the opinion that the charge, taken as a whole, laid down the correct rule for the jury.

We have given to the case a more careful and deliberate consideration than we otherwise should, owing to the able and earnest argument of the prisoner's counsel, and his apparent conviction that injustice had been done the defendant on the trial. However, after a patient and thorough examination of the circumstances of the case, we are unable to discover any sufficient reason to suppose that the defendant was in any respect unfairly dealt with on the trial. The judgment of the court below should be affirmed.

All concur, except Peckman and Gray, JJ., who dissent upon grounds stated in memoranda.

Gray, J.—[Dissenting.]—I must dissent from the opinion, in so far as it sustains the entire correctness of the instructions to the jury. In my opinion, a distinct error was committed in instructing the jury that the prisoner's defense of an *alibi* should be established to the satisfaction of the jury. This error was not cured or removed by the remainder of the charge. That rule would preclude the jury from giving the prisoner the benefit of any reasonable doubt in their minds, because it would require them to be first satisfied of the truth of that defense. No such strict rule is sanctioned by authority or in principle. To be satisfied of the truth of a matter is to cease to entertain doubts. If we are satisfied, it is from a conviction which leads to that state of mind. In such cases the burden is upon the prosecution to establish affirmatively the guilt of the accused, and, upon all matters needed to be proved to constitute the guilt, any reasonable doubt which the jury may entertain upon the conclusiveness of such proofs by the people must be resolved in the prisoner's favor. If the doubt is reasonable,—that is, if it arises upon the evidence,—the jury should give the benefit of it to the defendant. If the instructions to the jury are susceptible of conveying a different impression, the prisoner's rights have been prejudiced, and he should have a new trial, with correct instructions. Especially is this just and right in such a case as this, where the proofs as to the presence of the prisoner are not only sharply conflicting, but where some of the witnesses for the prosecution seem to have varied in their evidence upon the several trials of the prisoner. The only issue tendered was upon his identity with the person who committed the murder. Two previous juries had divided equally with respect to the question, and I believe this is peculiarly an instance, in view of all the circumstances, where justice demands that the case of the prisoner should be given to the jury without any obscur-

ity in, or doubt about, their instructions as to the law governing his rights. They should be distinctly informed that the prisoner was entitled to the benefit of any reasonable doubt which they might entertain with respect to his defense of an *alibi*. Because it is impossible for us to say that the jury may not have derived an erroneous impression upon that question from the judge's instructions, and for the reasons briefly expressed, I believe that justice requires a new trial.

PECKHAM, J.—[Dissenting.]—The result of the charge was to say to the jury that, if there was a reasonable doubt on the whole case, the defendant was entitled to an acquittal, but no doubt arose unless the jury were satisfied of the truth of the testimony relative to the *alibi*. This, I think, was error.

I agree with Judge GRAY in believing that a new trial should be granted.

## NOTE ON ALIBI.

Some authorities will be found on alibi as a defense in a note to the case of People *v.* Kelly, 3 *N. Y. Crim. Rep.*, at page 49. In addition to those there cited, the following are some recent cases of importance on the question:

Where in a criminal action the only defense is an alibi, and there is evidence to support it, the court should instruct the jury that if they have a reasonable doubt whether the defendant was present at the time and place of the act charged, or was so near thereto as to have done the same, they ought to acquit. State *v.* Kelly, 16 *Mo. App.* 213.

Proof of an alibi by preponderance of evidence justifies an acquittal. An instruction that the fact of an alibi, if established, should be considered in connection with other facts and circumstances is confusing and misleading. State *v.* McCracken, 66 *Iowa*, 569.

In a trial for larceny the alibi relied upon by defendant must be established by a preponderance of the testimony. State *v.* Rowland, 72 *Iowa*, 327. And in a trial for murder. People *v.* Lee Sare Bo, 72 *Cal.* 623.

Where on indictment for larceny, witnesses testify to the defendant being the person who committed the offense, and about an equal number testify to his being at a place other than that at which the larceny occurred, a verdict of guilty must depend on the jury's opinion of the credibility of the witnesses, and a judgment based on such verdict will not be reversed. State *v.* Falconer, 70 *Iowa,* 416.

To make mere distance from the scene of action a conclusive answer as an alibi, it must be shown to be so great as to render it impossible for the respondent to have participated in the act. State *v.* Fenlason, 78 *Me.* 495.

Where defendant in a prosecution for murder sets up an alibi, such defense must be proved by a preponderance of evidence. People *v.* Lee Sare Bo, 72 *Cal.* 623.

An instruction that, "to render proof of an alibi satisfactory, the evidence must cover the whole time of the transaction in question, so as to render it impossible that defendant setting up such defense could have committed the act," is liable to mislead the jury, and is ground for new trial. Wisdom *v.* People, 11 *Colo.* 170.

In the absence of evidence as to when the crime was committed, and where defendant was at the time; it is not error to refuse to instruct the jury on the subject of alibi; that not having been made an affirmative defense. State *v.* Jackson, 95 *Mo.* 623.

The court, in one instruction, directed the jury that the alibi relied on as a defense must be established by a preponderance of evidence, and in another told them in effect that if, upon the whole evidence, including that tending to establish the alibi, they entertained a reasonable doubt, they should acquit. *Held,* not contradictory. State *v.* Maher, 74 *Iowa,* 77.

An instruction that "the defense of alibi, to be entitled to consideration must be such as to show that at the very time of the commission of the crime charged, the accused was at another place, so far away or under such circumstances that he could not, with any ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof," poes not exclude from the jury the evidence pertaining to the alibi, and is proper. *Id.*

Where an alibi is set up as a defense, it is not prejudicial error to charge that, when the people make out such a case as would sustain a verdict of guilty, and the defendant offers evidence, the burden is on him to make out that defense; and as to an alibi and all other like defenses, that tend merely to cast a reasonable doubt on the case made by the people, when the proof is in, then the primary

Note on Alibi.

question is (the whole evidence on both sides being considered) whether defendant is guilty beyond a reasonable doubt; the law being that when the jury have considered all the evidence, as well that touching the alibi as the criminating evidence introduced by the prosecution, then if they have any reasonable doubt of the guilt of the accused they should acquit, otherwise not. Ackerson *v.* People (Ill.), 16 *N. E. Rep.* 847.

On trial for stealing a horse, one witness testified that he saw defendant at S. at about 2 P.M. There was evidence that he was seen riding the horse at two places between 3 and 5 the same afternoon. A charge was asked, directing an acquittal, unless the jury believed that defendant was not at S. at the time named. The evidence did not show the distance between the places. *Held,* that there was no error in refusing the charge. Burger *v.* State, 83 *Ala.* 36.

Where there is testimony tending to sustain the defense of alibi, interposed by one of the defendants, it is proper to instruct the jury as to the law of such defense; but where the defendant is prosecuted with others upon the theory that all conspired together to commit the crime, and there is testimony supporting it, a direction to the jury that if they found that one of the defendants was not actually present when the crime was committed, they should acquit him is properly refused. State *v.* Johnson (Kan.), 40 *Kans.* 266.

An instruction that the defense of alibi is often resorted to by guilty persons as well as innocent ones, and one in which perjury, mistake, and deception are often committed, is error. State *v.* Chee Gong, 16 *Or.* 534.

An instruction that the burden of proof is on the defendant to make out the defense of an alibi, the State having first introduced proof and shown that the defendants were present at and committed the alleged fatal assault, is error. *Id.*

Where an alibi is not the sole defense, the omission of the court to charge specially upon such defense is not reversible error, unless the court is requested so to charge or unless the charge was directed to such omission. Ryder *v.* State, 26 *Tex. App.* 334.

On a trial for larceny, instructions were given that an alibi relied on as a defense must be established, if at all, by preponderance of evidence, and that if upon the whole evidence, including that tending to establish the alibi, the jury entertained a reasonable doubt they must acquit. *Held,* that the instructions were not inharmonious or misleading. State *v.* Maher, 74 *Iowa,* 77.

Where defendant sets up an alibi, it is not error to charge that the burden of proving it is on him, and that an alibi "is valueless,

as a complete defense," unless proved " to the satisfaction of the jury," where immediately afterwards the court adds : " But an alibi is as much a traverse . . . as any other defense, and proof tending to establish it . . . may with other facts of the case, raise a reasonable doubt of the guilt of the accused." Rudy *v.* Commonwealth (Penn.), 18 *Atl. Rep.* 344.