Though the raising of the price of a commodity by a dealer, unconnected with any conspiracy, is not unlawful, yet, if there is a conspiracy to regulate the price, and that conspiracy is illegal, the raising of the price is an act done to effect its object, whether the price fixed is reasonable or excessive. Id. The object of the statute is accomplished when the parties have proceeded to act upon the agreement and done anything towards effecting its object. Id.

---

# Court of Appeals.

## October 23, 1894.

## PEOPLE v. PASQUALE LEONARDI.

### (62 St. Rep. 352; 143 N. Y. 360.)

1. HOMICIDE—INTOXICATION.

Where it appears, upon the trial of an indictment for murder in the first degree, that defendant was intoxicated at the time he committed the crime, the jury should be instructed that, if the intoxication had extended so far in its effects that the necessary intent, deliberation and premeditation were absent, the fact of such intoxication must be considered, and a verdict rendered in accordance therewith.

2. SAME.

The intoxication need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent.

3. APPEALS—COURT OF APPEALS—CRIMINAL CASES.

In the absence of exceptions, unless the record shows that the ends of justice really require a new trial, it will not be granted under section 528 of the Penal Code, even though some legal or material error may have occurred upon he trial.

Appeal from judgment of the court of oyer and terminer of Montgomery county, entered upon a verdict, which convicted the defendant of the crime of murder in the first degree.

Louis H. Reynolds, for appellant.

Leonard F. Fish, for respondent.

PECKHAM, J.—The defendant appeals from the judgment of the Montgomery oyer and terminer entered upon the verdict of a jury convicting him of the crime of murder in the first degree. He was convicted of the killing of one Conover by stabbing him with a knife. The defendant is an Italian about twenty-four years of age. On the afternoon of September 12, 1893, in one of the streets of Amsterdam, he met the deceased and inflicted upon him the wounds from which he died in the course of a few days. The killing was done publicly, in the presence of a number of people, and so far as the deceased was concerned it was wholly without provocation, and, as counsel contended, it was also without motive.

There was evidence upon the part of the defendant that he was very much intoxicated at the time, and the material question in this case arises over the charge of the judge as to the proper effect to be given to this fact. It would seem that the counsel for the defendant had maintained before the jury that defendant was substantially insane, and, therefore, irresponsible at the time he committed the deed, or if not insane that he was so far intoxicated as not to have been guilty of murder in the first degree.

Further elaboration of the facts preceding and surrounding the killing is unnecessary in order to appreciate the bearing of the remarks of the learned judge in his charge to the jury upon the question of intoxication.

The judge charged upon the defense of insanity that if the defendant had intelligence enough to know right from wrong as to the character of the act which he committed, knew that it was wrong, he was responsible; but if he were bereft of reason, intelligence, sense and judgment, and acted without knowledge or in-

tent as to the result of his acts he was an irresponsible person. No criticism can be passed upon this portion of the charge. The judge then said that that was all he should say as to the intoxication of the defendant bearing upon his knowledge of right and wrong, of his capacity to distinguish between right and wrong and to know whether the act of stabbing and killing Conover was wrong, but that he should speak thereafter upon the subject of intoxication as bearing upon the question of motive.

His charge thus far, it is seen, was confined to the question of drunkenness as an excuse, so far as to render the person irresponsible as an insane person, or as one who was so far intoxicated as to be wholly unaware of the act committed by him, or of its nature or extent. Then other matters were touched on by the learned judge, and subsequently he charged the jury with great ability and clearness upon the law in regard to the grade of the crime, the fact of premeditation and deliberation and the time necessary to elapse in order to constitute the higher grade of the crime of murder. All this was done with great fairness and in a manner which left nothing to be desired. He then continued his charge upon the fact of intoxication with regard to this portion of the case as folllows:

"Now, that is all I propose to say on this branch of the case except with respect to intoxication. Of course the defendant must, in order to be found guilty of murder in the first degree, or indeed of any degree of murder, have the intention to kill; have some motive perhaps—the law does not, however, require that any motive shall be proved, and perhaps I ought to correct my statement by saying that it is proper for you to look into the testimony closely for the purpose of discovering a motive. It is not necessary that you should find it. It is alleged on the part of the defendant that the prisoner did not, in consequence of intoxication, have any motive; that he did not have any such sufficient intention to kill as would constitute murder in the first degree, and that he was not capable of so deliberating as to be guilty of murder in the first degree. These are questions for you to consider upon all the evidence. I express no opinion with respect to

it. It is not my province to express any opinion with reference to a question of that nature. It is a question of fact for you to determine, and I am only required to state the rules of law which you ought to have in your minds in reaching your determination. If he was sober enough to know what he was about, and that the act was wrong, then his intoxication and his motive would both exist and the one would not destroy the other. If his intoxication made him more excitable and led him the more readily and easily to commit the crime, to form the intent and to reach a conclusion, as the result of deliberation upon it, then his intoxication would not help him. He must be so completely intoxicated in order to be excused as to be destitute of the capacity to realize the wrongful nature of his act; that his acts are wholly aimless and without purpose. I might illustrate the idea which I have in mind and am trying to present to you by referring to the testimony in relation to (his brother) Pietro's acts upon the streets. As I before remarked, there does not seem to be much question but what Pietro was very much intoxicated. And among the other acts which are spoken of by witnesses as having been done by Pietro is the act of standing on the street and picking up stones and throwing them down again with violence. Now what motive could he have had for picking up stones and throwing them down on the street? That seems to me to be very much like an aimless, purposeless act of a man who does not know what he is about, who is doing something without any motive, and I speak of it to impress upon your minds, if I can, a correct notion of the extent of the intoxication under which a man must rest in order to make his acts purposeless acts. He must strike something like the wild beasts, bereft of sense, intelligence, judgment and reason, that act according to a purposeless impulse. You are to consider how well the evidence satisfies you that the defendant Pasquale had reached that aimless and purposeless condition."

At common law drunkenness was not only not an excuse for crime, but evidence of intoxication while admissible, and to be considered in some cases, was yet generally of no avail. If a man made himself voluntarily drunk it was no excuse for any crime

he might commit while he was so, and he had to take the responsibility of his own voluntary act. If the assault were unprovoked, the fact of intoxication would not be allowed to affect the legal character of the crime.

The fact of intoxication was not to be permitted to be even considered by the jury upon the question of premeditation. These principles are stated in many cases in this court. People v. Rogers, 18 N. Y. 9; Kenny v. People, 31 id. 330; Flanigan v. The People, 86 id. 554. The strict rule of the common law has, however, been slightly relaxed by our Penal Code, the twenty-second section of which reads as follows:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act."

Under this section it has been held by this court that it is not proper to charge the jury that the mere fact of intoxication is necessarily evidence even tending to show an absence of premeditation and deliberation. Such fact, the court said, might tend in some cases to show absence, while in others it might not. We held that it was now simply the duty of the judge to leave it to the jury to take into consideration the question of intoxication determining the motive or intent of the accused, and whether he acted with deliberation and premeditation. People v. Mills, 98 N. Y. 176. We do not think that under this statute the intoxication need be to such an extent as to necessarily and actually preclude the defendant from forming an intent or from being actuated by a motive before the jury would have the right to regard it as having any legal effect upon the character of the defendant's act. Any intoxication, the statute says, may be considered by the jury and the decision as to its effect rests with them. That a man may be even grossly intoxicated and yet be capable of forming an

intent to kill or do any other criminal act is indisputable, and if, while so intoxicated, he forms an intent to kill and carries it out with premeditation and deliberation, he is without doubt guilty of murder in the first degree, and the jury should, when such a defense is interposed, be so instructed.    It is a most important and far-reaching statute in its possible effects, and the jury ought to be warned that where the criminal act is fairly and clearly proved, the fact of intoxication as furnishing evidence of the want of the criminal intent which the proof might otherwise show, should be considered by it with the greatest care, caution and circumspection, and such fact ought not be allowed to alter the character or grade of the criminal act unless they have a fair and reasonable doubt of the existence of the necessary criminal purpose or intent after a consideration of such evidence of intoxication.    The safety of society depends to a large extent upon the due administration of our criminal law, and the voluntary intoxication of an accused person should be most cautiously considered before arriving at a conclusion that it has in any way altered the character or grade of a criminal act.    It ought always to be born in mind that by the terms of the very statute cited no act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition.    In other words, it should still be remembered that voluntary drunkenness is never an excuse for crime.    In People v. Fish, 125 N. Y. 136; 34 St. Rep. 840, it was held that under this section of the Penal Code, if the accused be sober enough to and do form an intent and so deliberate upon and premeditate the crime, then he is responsible the same as if he had been perfectly sober, and that he is guilty even though intoxicated.    By our statute deliberation and premeditation are necessary constituents of the crime of murder in the first degree, and if by reason of intoxication the jury should be of opinion that the deliberation or premeditation necessary to constitute murder in the first degree did not exist, the crime is reduced to a lower grade of murder, or in the absence of any intent to kill, then to manslaughter in some of its grades.    The intoxication need not be to the extent of depriving the accused of all power of volition or

of all ability to form an intent. The jury should be instructed that if the intoxication had extended so far in its effects that the necessary intent, deliberation and premeditation were absent, the fact of such intoxication must be considered and a verdict rendered in accordance therewith. In the portion of the charge of the learned judge which has been above set forth we fear that he required evidence of the existence of too great a degree of intoxication before the jury were permitted to find the absence of the necesary intent or degree of deliberation or premeditation. I have endeavored to state what the rule is in such cases.

There was no exception taken to the charge of the judge, and under the old system the defendant would be without remedy, although we might feel convinced that the judge had erred in a material portion of the charge. But the statute now provides for a direct review by this court of a judgment upon a verdict of conviction of murder in the first degree. Where justice demands it we can grant a new trial although no exception appears in the case. Errors, however, even of a material nature, if unexcepted to upon the trial, are not necessarily ground for granting a new trial by this court. In the absence of exceptions, unless the record shows that the ends of justice really require a new trial, it will not be granted, even though some legal or material error may have occurred upon the trial. These principles are decided in several cases. People v. Driscoll, 107 N. Y. 414; 12 St. Rep. 253; People v. Lyons, 110 N. Y. 618; 16 St. Rep. 660; People v. Kelly, 113 N. Y. 647; 22 St. Rep. 969.

In this case the error in the charge was of the most vital nature, and although possible it may be open to the claim that it was given with reference to the question as to what amount of intoxication formed an excuse to the defendant, yet we are fearful that the jury may have been misled and may have thought that the language appertained to the subject of considering the extent of the intoxication of the defendant with reference to the intent with which he struck the blows.

Taking all the facts and circumstances of the case into consideration as they appear in this record, we think the demands of

justice will be best subserved by giving the defendant the benefit of a new trial.

The judgment must, therefore, be reversed and a new trial granted.

All concur.

Judgment reversed.

---

## NOTE ON CRIMINAL IRRESPONSIBILITY.

INSANITY.—An insane person is incapable of crime. People v. Coleman, 1 N. Y. Cr. 2.

The rule established by section 21 of the Penal Code has been criticised because it excludes consideration of the question whether the accused possessed sufficient power of self-restraint to forbear the commission of an act which he clearly perceived to be criminal. People v. Taylor, 52 St. Rep. 920; 138 N. Y. 407.

An insane delusion with reference to the conduct and attitude of another cannot excuse the criminal act of taking his life, unless it is of such a character that, if it had been true, it would have rendered the homicide excusable or justifiable. People v. Taylor, 52 St. Rep. 919; 138 N. Y. 406.

A desire for self-destruction, and the adoption of means to secure it, do not of themselves indicate a mental impairment, which has advanced to the stage of irresponsibility, otherwise the law would not make the attempt to kill one's self a crime. People v. Taylor 52 St. Rep. 920; 138 N. Y. 408.

The heat of passion and feeling, produced by motives of anger, hatred or revenge, is not insanity. People v. Foy, 53 St. Rep. 268; 138 N. Y. 667. The law holds the doer of the act, under such conditions, responsible for the crime. Id.

Where one of the defenses interposed to an indictment for murder was insanity, it is not error to permit the prosecution, after evidence has been given on the part of the defense as to words and actions of defendant on an occasion specified which, it was claimed, indicated insanity, to show that on that occasion defendant was intoxicated. People v. Miles, 62 St. Rep. 346; 143 N. Y. 383; 38 N. E. 456.

An insane man frequently deliberates, and, after the most mature deliberation, commits acts which, but for his insanity, would be crimes. People v. Wood, 126 N. Y. 268; 36 St. Rep. 963. The question alway is, not whether the party deliberated, but whether he was, at the time, insane within the legal definition of the term. Id.

An insane person cannot be lawfully punished for an act which was committed by him while in a state of insanity, or when he has become insane during or after a trial or conviction. People v. McElvaine, 125 N. Y. 600; 36 St. Rep. 181.