# Court of Appeals.

December 4, 1894.

## PEOPLE v. DAVID HAMPTON.

(71 S. R. 357.)

Appeal—Facts.

It is the province of the jury to determine questions of fact and decide between conflicting inferences, and the duty of the court of appeals to interfere arises only when it can see that the verdict is clearly against the weight of evidence, or appears to have been influenced by passion, prejudice, mistake or corruption.

Appeal from judgment of the court of general sessions of the peace of the city and county of New York, entered upon a verdict convicting defendant of the felony of murder in the first degree.

Robert J. Haire, for appellant.

John D. Lindsay, for respondent.

FINCH, J.—The defendant appeals for a judgment rendered on a verdict convicting him of murder in the first degree. The case has been submitted upon briefs and without oral argument. That Annetta Ahrens was murdered by some person with such deliberation and premeditation as to constitute the crime charged is conceded. That the defendant was its perpetrator rests as a fact wholly upon circumstantial evidence, and the contention now is that it was insufficient to warrant the conclusion of the jury. It must not be forgotten that it is their province to determine questions of fact, and decide between conflicting inferences, and that our duty to interfere arises only when we can see that the verdict is clearly against the weight of evidence, or appears to have been influenced by passion, prejudice, mistake or corruption. People v. Taylor, 138 N. Y. 398; 52 St. Rep. 914. I have read the evidence given carefully, and do not see how the jury could have reached any different conclusion. The mass of testimony is much too great

to be repeated, but an outline of the principal incriminating facts will sufficiently show the ground of the verdict.

Mrs. Ahrens was last seen alive between eight and nine o'clock in the evening of December 29th, 1892. She was a widow, about seventy or eighty years of age, miserly and penurious in her habits, often having considerable sums of money in her possession, and with a passion for gold coin, which she refused to spend and would not deposit in the bank, although sums of considerable amount were credited upon her bank books. She occupied two rooms, the smaller of which was a bedroom and held a wardrobe, with a few other articles of furniture. On the morning of December 30th she was found dead in her bed, with the marks of a blow on her face and her throat cut so that her head was almost severed from her body. Everything in the bedroom was in disorder and confusion. The door to the outer room leading from the hall had been burst open and stood partly ajar. In a bureau in that room a small amount of money was found undisturbed, but much less than the woman was in the habit of keeping about her. On the washstand was a knife with a wooden handle, on which was the word "bread," in raised letters, the steel blade being about eight inches in length and stamped on the metal with the words "bread knife." It was stained with blood, some of which had dripped from it upon the stand. That the murder was committed with that weapon is, of course, a natural and obvious inference. That knife was very clearly identified as the property of the defendant. He took it away from Mrs. Johnson's in a bag on the 15th of December, having at the time no other articles of property except a plate, a dish, a cup and saucer and some small amount of clothing, and having been turned out by Mrs. Johnson because unable to pay his rent. He went with his wife directly to Mrs. Ahrens' house, where he stayed till December 26th, or three days before the murder. He there occupied a room adjoining the sitting room of Mrs. Ahrens, separated from it by a partition in which was a glass door. The deceased had covered this with wrapping paper to prevent observation, but a corner had been torn off, leaving an opening through which it was possible for the defendant in his room to see what Mrs.

Ahrens was doing in hers. On Christmas day she found that she had been robbed of about eighty dollars, and suspected the defendant as the thief. After his arrest he confessed that he stole the money on Christmas eve but claimed he had never robbed her since. The money was taken from the wardrobe according to Mrs. Ahrens' account of it. Two days later he was seen drunk and excited and with a wad of bills in his hand and said there was plenty more where that came from. On the evening of that day he left Mrs. Ahrens, his few things having been put out in the hall, and took a room with Mrs. Randolph. On Thursday, December 29th, he told her that he was going away and his wife would settle with her. He had given his name as David Johnson, and said he had just come from the west and was going back again. On the evening of that day, which was the night of the homicide, and somewhere between nine and eleven o'clock, he was in a saloon with a roll of bills, amounting to something over eighty dollars, treating everybody and buying champagne, whisky and cigars. At about one o'clock, he left for his room, asking his companion to tell his landlady that he was gone away with horses, and making an arrangement to go with him the next day to Newark. In the morning he gave the witness, Papisco, a five-dollar gold piece with which to buy tickets, in Newark bought clothes paying out two five-dollar gold pieces and a five-dollar bill, and later, in Stone's, he produced a twenty-dollar gold piece. His wanderings about Newark are detailed, and there he was finally arrested hiding under a false name. One other circumstance was added to the proof. The murdered woman's hands were observed to be lifted toward her head, and in the palm of one was found a finger-stall or small bandage for the finger. The proof shows that before the murder the defendant had such a bandage on his finger, and at the trial that found in the dead woman's hand was put upon his finger and fitted perfectly.

There was very much more of the evidence, but what I have stated is the substantial outline. The prisoner gave no explanation of his possession of the money and the gold coin, and falsely denied the ownership of the knife. That the accused had a knowledge and opportunity adequate to the commission

of the crime; that he had once already robbed the deceased, and took his plunder from her wardrobe; that his extreme poverty furnished a motive for the act; that he owned the weapon found with blood upon it at the scene of the homicide; that the morning after the murder he left the state and went to Newark without any apparent reason; that while there he had in his possession a considerable amount of money, at least thirty dollars of which was in old coin; that there he bought new clothing and threw the old into a privy vault; that he endeavored to hide away and conceal himself to escape arrest, were all facts more or less strongly proved, and which called for some explanation consistent with innocence to break their force. None whatever was given. These were the main facts, but surrounded with many details of conduct and conversation pointing in the same direction. The proof was quite sufficient to warrant an inference of guilt, and the case was one over which the jury could not long hesitate.

None of the exceptions to the charge of the court need discussion. They raised no legal question about which there can be any doubt. It is our duty to affirm the judgment.

### NOTE ON "POWER OF COURT OF APPEALS UNDER SECTION 528 OF CRIMINAL CODE."

Power of court of appeals to review the facts in a criminal case, where the judgment is of death. People v. Kerrigan, 147 N. Y. 201; 69 S. R. 508; 9 N. Y. Cr. 555; People v. Shea, 147 N. Y. 78; 69 S. R. 320; People v. Barberi, 149 N. Y. 256; People v. Corey, 148 id. 476; People v. Nino, 149 id. 317; People v. Leonardi, 140 id. 360; 68 S. R. 356; 38 N. E. 372; People v. Wilson, 141 N. Y. 185; 56 S. R. 828; People v. Trezza, 125 N. Y. 740; 36 S. R. 149; People v. Taylor, 138 N. Y. 405; 52 S. R. 918; People v. Loppy, 128 N. Y. 629; 40 S. R. 410; People v. Fish, 125 N. Y. 136; 34 S. R. 840; People v. Stone, 117 N. Y. 480; 27 S. R. 823.

The court of appeals is to exercise this authority under settled rules. People v. Tice, 131 N. Y. 654; 43 S. R. 576; 4 Silv. (Ct. App.) 102; People v. Fish, 125 N. Y. 136; 34 S. R. 824; 8 N. Y. Cr. 134.

The court must see that the determination is against the clear weight of the evidence or was influenced in some way by passion, prejudice, mistake, perversion or corruption. People v. Fish, 125 N. Y. 136; 34 S. R. 842; 8 N. Y. Cr. 134; People v. Taylor, 138 N. Y. 405; 52 S. R. 918; People v. Loppy, 128 N. Y. 629; 40 S. R. 410; 8 N. Y. Cr. 321; People v.

Trezza, 125 N. Y. 740; 36 S. R. 149; People v. Stone, 117 N. Y. 480; 27 S. R. 823; People v. Shea, 147 N. Y. 78; 69 S. R. 320; 11 N. Y. Cr. ——.

In these cases, the court of appeals is simply invested with the jurisdiction formerly possessed by the supreme court to grant new trials on the merits. People v. Cignarale, 110 N. Y. 26; 16 S. R. 155.

It is governed by the practice regulating the review of questions of fact upon appeal to the supreme court. People v. Taylor, 138 N. Y. 405; 52 S. R. 918; People v. Loppy, 128 N. Y. 629; 40 S. R. 410; People v. Trezza, 125 N. Y. 740; 36 S. R. 149; People v. Fish, 125 N. Y. 136; 34 S. R. 840; People v. Stone, 117 N. Y. 480; 17 S. R. 823.

The court must, on the whole case, reach the conclusion that injustice, or a strong probability that injustice, has been done. People v. Tice, 131 N. Y. 656; 43 S. R. 576; 4 Silv. (Ct. App.), 102; People v. Cignarale, 110 N. Y. 27; 16 S. R. 155; People v. Trezza, 125 N. Y. 740; 36 S. R. 149; 8 N. Y. Cr. 284; 4 Silv. (Ct. App.), 357; People v. Kelly, 113 N. Y. 647; 22 S. R. 969; 2 Silv. (Ct. App.), 230; 7 N. Y. Cr. 40; People v. Pallister, 51 S. R. 725; People v. Lyons, 110 N. Y. 619; 16 S. R. 660; 2 Silv. (Ct. App.), 60; People v. Corey, 148 N. Y. 476; People v. Kerrigan, 147 id. 210; 69 S. R. 508; 9 N. Y. Cr. 555.

Reversal is not authorized simply because of a difference of opinion on the facts between the court and the jury. People v. Kelly, 113 N. Y. 648; 22 S. R. 969; 2 Silv. (Ct. App.), 233; People v. Stone, 117 N. Y. 483; 27 S. R. 823; People v. Cignarale, 110 N. Y. 33; 16 S. R. 155.

Court cannot determine controverted questions of fact, arising upon conflicting evidence. People v. Stone, 117 N. Y. 483; 27 S. R. 823; People v. Wyman, 128 N. Y. 586; 38 S. R. 747; 3 Silv. (Ct. App.), 491; People v. Kerrigan, 147 N. Y. 210; 69 S. R. 508; People v. Shea, 147 N. Y. 78; 69 S. R. 320.

Court may reverse the proceedings and conviction, where record declares upon its face that trial court had no jurisdiction, or constitutional method of trial by jury had been disregarded, or some other fundamental defect in the proceedings, People v. Bradner, 107 N. Y. 4; 10 S. R. 667; or, where defendant has been prejudiced by intemperate remarks of the district attorney. People v. Greenwall, 115 N. Y. 527; 26 S. R. 230; 7 N. Y. Cr. 314.

Though no exception appears in the case, People v. Leonardi, 140 N. Y. 360; 62 S. R. 356; 38 N. E. 372; People v. Corey, 148 N. Y. 476; People v. Shea, 147 id. 78; 69 S. R. 320; 11 N. Y. Cr. —; People v. Youngs, 151 N. Y. 210; or, when accused has not had a fair trial, People v. Kerrigan, 147 N. Y. 210; 69 S. R. 508; 9 N. Y. Cr. 555; or, that the case has been tried and submitted to jury upon an erroneous theory, prejudicial to the accused, People v. Barberi, 149 N. Y. 256; or, to correct erroneous statements of law in the charge to jury, or improper comments upon facts or the evidence bearing upon them, People v. Barberi, 149 N. Y. 256; or, where it is satisfied that the verdict

is against the weight of evidence or against law or that justice requires a new trial, People v. Shea, 147 N. Y. 78; 69 S. R. 320; or, for erroneous rulings at the trial, when some principle or rule of law has been violated to the prejudice of the accused. People v. Youngs, 151 N. Y. 210.

Legal or material error, unexcepted to, not necessarily ground for granting new trial. People v. Leonardi, 140 N. Y. 360; 62 S. R. 356; 38 N. E. 372; People v. Driscoll, 107 N. Y. 414; 12 S. R. 253; People v. Lyons, 110 N. Y. 647; 16 S. R. 660; People v. Kelly, 113 N. Y. 647; 22 S. R. 969.

In other than capital cases, the court of appeals acts only in the capacity of an ordinary appellate tribunal, reviewing errors of law pointed out by exceptions duly taken. People v. Shea, 147 N. Y. 78; 69 S. R. 320.

Court of appeals must exercise its power to grant a new trial for legal error in conformity with the provisions of section 542 of the Criminal Code. People v. Youngs, 151 N. Y. 210.