[No. 20256.  In Bank. — June 28, 1887.]

## THE PEOPLE, RESPONDENT, v. LEE SARE BO, APPELLANT.

72 623
76 353
72 623
86 332
72 623
115 11
72 623
129 263
72 623
144 301

CRIMINAL LAW — MURDER — DYING DECLARATIONS. — In a prosecution for murder, a declaration made by the deceased in reference to the homicide a few moments before his death, and immediately preceding a statement by him to the effect that he knew he was about to die, is admissible as a dying declaration.

ID. — EVIDENCE — TESTIMONY TAKEN AT CORONER'S INQUEST. — In such a prosecution, the refusal to admit in evidence a paper claimed by the counsel for the defendant to be the testimony taken at the coroner's inquest, is not error, when there is nothing to show that the paper was such testimony, except the statement of the counsel offering it, and the record fails to show what it contained.

ID. — INSTRUCTIONS — REASONABLE DOUBT. — In the charge to the jury, the court, after correctly instructing them upon the subject of reasonable doubt, said: "But mere probabilities of innocence or doubts, however reasonable, which beset some minds on all occasions, should not prevent a verdict" of guilty. *Held*, that the instruction, although ambiguous, could not have misled the jury.

ID. — ASSUMPTION OF FACT IN INSTRUCTION — EXPRESSION OF OPINION — CONFLICT OF EVIDENCE. — In a prosecution for murder, an instruction which assumes the fact of the killing, or expresses an opinion upon the weight of the evidence tending to show it, will not be presumed erroneous, where there is no conflict in the evidence contained in the record as to the fact of the killing.

ID. — ALIBI — PROOF OF — PREPONDERANCE OF EVIDENCE. — In such a prosecution, the defense of an *alibi*, being extrinsic, and not arising out of the *res gestæ*, must be proved by a preponderance of evidence.

ID. — INSTRUCTIONS — WEIGHT OF EVIDENCE. — The court further instructed the jury: "If you are satisfied beyond a reasonable doubt that the defendant, at the time and place specified in the information, killed the party alleged to have been killed, under such circumstances as under the

testimony as given before you and the law that I have given you, it would be murder in the first degree, and you desire that he shall suffer the death penalty, the form of your verdict will be, 'We, the jury, find the defendant guilty of murder in the first degree.'" *Held*, that the instruction could not be construed as charging the jury that the killing, if it occurred at the time and place specified, would, under the testimony and law, be murder in the first degree.

ID. — REPETITION OF INSTRUCTIONS — INTIMATION AS TO ENORMITY OF CASE. — The court, before giving the instructions asked for by the defendant, the substance of which had already been given by him, remarked to the jury that he did not desire to have any question in the case, and that he would give the instructions asked for in addition to those he had already given, and that he did not deem it necessary to give certain instructions that he usually gave in homicide cases. *Held*, that the remarks of the court were not an intimation that the case was one of unusual enormity, or that the instructions asked by the defendant were given under protest.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*H. W. Hutton,* and *J. D. Whaley,* for Appellant.

*Attorney-General Johnson,* for Respondent.

PATERSON, J.—Defendant was convicted of murder, and sentenced to be hanged. His counsel presents for our consideration seven assignments of alleged error.

1. Gon Yen, widow of Ah Chuck, whom it is alleged defendant killed, was called as a witness by the prosecution and testified against the objection of defendant to a declaration made by her husband immediately after the shooting, in which he stated that the defendant shot him. The prosecution claimed that the statement was made by Ah Chuck under a sense and belief of impending death, and without any hope of recovery, and was therefore admissible as a dying declaration. Counsel for defendant claimed that there was no foundation laid for its admissibility; that all the evidence shows is a bare

fear of death; and the declaration having been made before the statement that he would die, it is inadmissible.

There was no evidence concerning the condition of the declarant's mind other than that given by the witness, Gon Yen, who testified through an interpreter in substance: that immediately after the shooting she ran to Ah Chuck and had him carried into the house. "He died seven or eight minutes after he was brought in, and quit talking three or four minutes before he died. When he first came in, he told me he thought he was dead or would die. All I can remember is, he told me he was afraid he was going to die; afraid of death. He said ' I will die.' That is among the first things he said. No; first he said he wanted me to be sure to have Ah Po Qui Po,—that means dark-skinned Po,—the defendant there, arrested; that he was the man that shot him. After he had said a few words of that kind, he said,·' I think I will die.' "

We think it quite apparent from this testimony that the wounded man felt that the finger of death was upon him, and in view of the fact that all he said was uttered in the brief period of three or four minutes, it is immaterial whether the declaration was made before or after the statement that he was going to die. An express statement by the declarant that he believes he is about to die is not necessary at any time, provided the circumstances show in him at the time a sense of impending death. (*People* v. *Taylor,* 59 Cal. 640; *People* v. *Gray,* 61 Cal. 164.)

2. The court did not err in refusing to admit the paper in evidence which counsel for defendant claimed to be testimony of witnesses taken before the coroner at the inquest. Conceding that if properly authenticated it would have been admissible for the purpose claimed, it is sufficient to say that there was nothing to show that it was testimony taken before the coroner except the statement of counsel in offering it. Furthermore,

there is nothing in the record to show what the paper contained.

3. In the charge to the jury the court, speaking on the subject of reasonable doubt, gave Mr. Chief Justice Shaw's definition thereof which has been so often approved here, but, unfortunately, threw in this meaningless expression: "But mere probabilities of innocence or doubts, however reasonable, which beset some minds on all occasions, should not prevent such a verdict."

What the court meant by mere probabilities of innocence or doubts *which beset some minds on all occasions*, in view of the correct and unambiguous language of the charge upon the same matter before and after this expression, it is difficult to conjecture; but from the language following, it would appear that the court desired to say to the jury that mere chimerical or fanciful doubts should not prevent a verdict if they were satisfied to a moral certainty of the guilt of the defendant. The court went on to say: "In other words, gentlemen, a reasonable doubt in a legal sense is a doubt which has some reason for its basis; it is not a doubt arising from mere caprice or groundless conjecture, but it must arise from the facts proven in the case. You have no right to go outside of the evidence to hunt for doubts, nor should you entertain those which are merely chimerical or based on groundless conjectures. It is that state of the case which, after an entire consideration and comparison of all the evidence, leaves your minds in that condition that you cannot say you feel an abiding conviction, to a moral certainty, of the truth of the charge. . . . . The hypothesis contended for by the people must be established to an absolute certainty, to the entire exclusion of any rational probability of any other hypothesis being true, and if a reasonable doubt is entertained by the jury on any material fact in the case, they should acquit." The language of the sentence to which this objection is addressed is so ambiguous, and the charge in other por-

tions so strong and clear on the question of reasonable doubt, we think the jury could not have been misled.

4. Defendant claims that the court erred in saying to the jury: " If you believe, beyond a reasonable doubt, that the party was killed as alleged in the information at the time and place specified therein, upon that you will have very little difficulty I assume, will be satisfied beyond a reasonable doubt, then, the next question for you to determine is, whether it was done by the defendant or not." It is said that this is a charge upon the weight of evidence, an invasion of the prerogative of the jury, and violative of the constitutional provision inhibiting charges with respect to matters of fact. So far as the transcript shows, there was no controversy with respect to the killing and death of Ah Chuck. It is stated that there was evidence " tending to show that defendant, on the fifth day of October, 1882, in the city and county of San Francisco, shot the deceased, Ah Chuck, who, in about seven or eight minutes thereafter, died from the effects thereof." Gon Yen testified to the shooting and death of Ah Chuck, and there is no evidence to the contrary.

Conceding that the instruction assumes a fact or expresses an opinion on the weight of evidence, in order to hold that it was erroneous, we should have to assume that there was a conflict of evidence upon the question of the killing. This we cannot do. There is positive evidence in the bill of exceptions that Ah Chuck was killed at the time and place alleged, and if there was any evidence to the contrary, the fact should be stated, or the evidence should be given in the transcript.

5. The court further said: " If I understand the testimony for the defendant, it is simply that he was not there and did not know anything about it, and, of course, had nothing to do with it; that is, what in law is called an *alibi*, and he is not required to establish that beyond a reasonable doubt, but may establish it

by a preponderance of testimony; and, in this matter, gentlemen, before you can find a verdict against the defendant, of course you must be satisfied beyond a reasonable doubt that he was at the time there."

Appellant quotes the first clause of this sentence, and upon that bases an assignment of error upon the ground that it casts upon the defendant the burden of proving his innocence by a preponderance of evidence. The court had told the jury many times that the burden of proof rested upon the prosecution, that every material fact must be established by the prosecution to the satisfaction of the jury beyond a reasonable doubt. The first clause in the sentence quoted was intended to meet circumstances like those referred to in the defendant's instruction No. 4. At the request of defendant the court instructed the jury among other matters as follows:—

"4. The policy of the law, as evidenced by the presumption of innocence and the doctrine of reasonable doubt, would require the public prosecutor to introduce such proof as will give a fair account of the transaction. This being done, the defendant may produce in evidence his defense, and he is not required to prove the circumstances thereof beyond a reasonable doubt, or to the extent of satisfactorily establishing his defense; he is only required to prove the same as any other facts are required to be proved, and if the matters relied on be supported by such proof as would produce a reasonable doubt in the minds of the jury as to the guilt of the defendant, when the whole evidence concerning the transaction comes to be considered by the jury, the rule of law is, that there must be an acquittal.

"But if a defendant enters upon an independent defense, and attempts to prove extrinsic facts, not arising out of the *res gestæ*, the rule is, that when the defense set up is in itself purely extrinsic, the allegations of the information not being denied, it is necessary that such defense be sustained by a preponderance of proof.

"5.  It must be established beyond a reasonable doubt
that the defendant was present, and committed or par-
ticipated in the commission of the offense, and if the
proof leaves it doubtful in the minds of the jury whether
the defendant was present at or absent from the place at
the time the crime was committed, he must be acquitted."

6.  Defendant excepted to the following instruction on
the ground that it is a charge as to matter of fact: " If
you are satisfied beyond a reasonable doubt that the de-
fendant, at the time and place specified in the informa-
tion, killed the party alleged to have been killed, under
such circumstances as under the testimony as given be-
fore you and the law that I have given you, it would be
murder in the first degree, and you desire that he shall
suffer the death penalty, the form of your verdict will be,
' We, the jury, find the defendant guilty of murder in the
first degree.' "

While the instruction is inartificially drawn, it would
require a most astute philologist to show wherein the lan-
guage, with its punctuations, asserts that the killing, if
it occurred at the time and place specified, would, under
the testimony and the law, be murder in the first degree.

7.  The last assignment of error is, that the court erred
in remarking, while engaged in charging the jury, "I do
not desire to have any question in this case at all.   There
are some instructions asked by the defendant which I
will give in addition to those which I have already
given."   And again in saying, "In this case, gentlemen,
I do not deem it necessary to give the instructions which
I usually give in homicide cases."   The court had already
given in its oral charge the substance of the instructions
asked by defendant, and the first statement quoted was
doubtless apologetic for the repetition.

It cannot be fairly assumed that the court intended to
prejudice the jury against the defendant by an intima-
tion such as appellant draws from the language used, i. e.,
that the case was one of unusual enormity, and the in-

structions favorable to the defendant were omitted or given under protest. Of course it is possible for the trial court by innuendo, facial expression, or vocal emphasis or slide, to indicate a prejudice against the defendant on trial for crime, and thus grievously injure his case; but there is nothing in this case to indicate any such feeling or disposition on the part of the judge who presided at the trial. On the contrary, the instructions given by the court of its own motion are replete with expressions more favorable to defendant than any found in those which were asked on his own behalf.

We have examined the affidavits used on motion for a new trial, and think the court below correctly held that they were insufficient.

Every point made has been considered, and we find no error.

Judgment and order affirmed.

McFARLAND, J., THORNTON, J., SEARLS, C. J., and SHARPSTEIN, J., concurred.

Rehearing denied.