[Crim. No. 98.  First Appellate District.—October 7, 1908.]

THE PEOPLE, Respondent, v. ALEXANDER G. GARNETT, Appellant.

CRIMINAL LAW—APPEAL—TRANSCRIPT—SUBSTITUTION OF COPY FOR BURNED ORIGINAL—WAIVER—MOTION TO STRIKE FROM FILES.— When, after transfer to this court of an appeal to the supreme court, taken before the conflagration of April 18, 1906, in which the original transcript was burned, the attorney general, upon notice to defendant and his attorneys, moved to substitute a printed copy of the transcript for the original, which was granted, the defendant and his counsel, by failing then to object thereto, waived further objection, and a motion by defendant upon the hearing of the appeal to strike the restored transcript from the files must be denied.

ID.—APPEAL BEFORE CHANGE OF CONSTITUTION—TRANSFER AFTER FIRE— JURISDICTION TO RESTORE RECORD.—Notwithstanding the original appeal was taken to the supreme court before the change in the constitution establishing the district courts of appeal, yet, after such change, the supreme court could transfer the cause to this court and, when so transferred after the fire of April 18, 1906, which destroyed all supreme court records, this court had jurisdiction, under the act of June 16, 1906, to order restoration of the record upon appeal.

ID.—ATTORNEYS IN CRIMINAL CASES—FORMAL SUBSTITUTION NOT REQUIRED.—Sections 284 and 285 of the Code of Civil Procedure, as to the substitution of attorneys in civil cases, have no application in

criminal cases, and no formal substitution of attorneys is required therein.

ID.—MURDER—DEPRIVATION OF COUNSEL—REPRESENTATION AT TRIAL BY COUNSEL APPEALING—ESTOPPEL.—When defendant convicted of murder claims reversal because deprived of counsel at his trial, who appeared at his arraignment, it is sufficient that he was in fact represented at the trial by other counsel of his own choice, who examined all witnesses, moved for a new trial, and signed the notice of appeal, so that he would have no appeal if such counsel was not authorized to represent him. In such case, he is estopped to urge that he was in any way deprived of his constitutional right to appear and defend in person and with counsel.

ID.—DEPOSITION OF PHYSICIAN—DESCRIPTION OF FATAL CHARACTER OF WOUND OF DECEASED—DYING DECLARATION NOT RECEIVED.—The deposition of a physician was properly read to show the character and fatal nature of the wounds sustained by the deceased, though a dying declaration therein was held inadmissible, and was not read to the jury.

ID.—DEPOSITION AT PRELIMINARY EXAMINATION—ADMISSIBILITY—AUTHENTICATION—EXPLANATORY TESTIMONY OF STENOGRAPHER.—A deposition of a witness absent from the state at the time of trial taken at the preliminary examination, which is authenticated in due form by the official stenographer regularly appointed to take and authenticate the testimony, is sufficiently confirmed for admissibility by the testimony of the stenographer that he personally transcribed part of his notes and dictated a portion to his typewriter, and that the entire transcript was compared by him with his original notes and that it was correct.

ID.—EXPLANATION AS TO WORDS IN LONGHAND ON NOTES.—When the stenographer explained words in longhand on his original notes, that they truly represented the original notes, and were merely written for convenience of more ready comparison between the transcript and the original notes, such explanation does not discredit the correctness of his certificate to the transcript of the evidence.

ID.—DECLARATION OF DEFENDANT—UNCERTAINTY NOT AFFECTING ADMISSIBILITY.—The testimony of a witness as to a declaration of the defendant, "He said, 'I have shot McClung,' or 'McClung is shot,' I don't know which"—is admissible notwithstanding the uncertainty thereof, which affects only the weight of the testimony.

ID.—DISABLING OF TELEPHONE BY DEFENDANT TO PREVENT CALLING OF DOCTOR AFTER SHOOTING.—Evidence is admissible to show that shortly after the shooting of the deceased, the defendant disabled the telephone connecting the apartments of the witness where deceased was lying after the witness had attempted to telephone for a doctor, but was prevented by the defendant. Such evidence

tended to show that the shooting was not accidental, as claimed by the defendant, but was prompted by malice.

ID.—IMPEACHMENT OF EVIDENCE GIVEN ON PRELIMINARY EXAMINATION —INCONSISTENT STATEMENTS—FOUNDATION NOT LAID.—The same rule which forbids the impeachment of a witness at the trial by contrary statements, unless the proper foundation is laid by calling the attention of the witness thereto, applies to evidence given at the preliminary examination, which becomes admissible when the witness is out of the state. The proper foundation must have been laid on the preliminary examination to introduce any contradictory statements made by the witness.

ID.—EVIDENCE AT CORONER'S INQUEST.—The evidence given by the absent witness at the coroner's inquest is not admissible without foundation laid, to show a discrepancy therein from the testimony at the preliminary examination.

ID.—CONVICTION OF MURDER IN SECOND DEGREE—SUFFICIENCY OF EVIDENCE—INTENTIONAL KILLING—MALICE IMPLIED.—Notwithstanding the claim of the defendant that the killing was accidental, there was sufficient evidence to show that the killing was intentional, without any considerable provocation, from which malice would be implied sufficient to support a conviction for murder in the second degree.

ID.—INSTRUCTIONS—ACCIDENTAL KILLING—UNLAWFUL ACT—VAGUE AND INACCURATE INSTRUCTION WITHOUT PREJUDICE.—A vague and inaccurate instruction as to the responsibility of the defendant for an accidental killing while engaged in an unlawful act, which ignores the question whether or not the accidental discharge of the pistol was caused by an unlawful act, should not have been given, but the giving thereof was without prejudice to the defendant, when the instructions as a whole concerning accidental killing given at defendant's request were quite as favorable to the defendant as the law would permit, and require the jury to find for the defendant, if they believe from the evidence that deceased was killed from the accidental discharge of the revolver, or if they have a reasonable doubt upon that subject, and when the court in other parts of the charge gave full and complete instructions as to the degrees of murder, and as to what constitutes manslaughter, both voluntary and involuntary.

ID.—ABSENCE OF DEFENDANT AND COUNSEL PENDING INSTRUCTIONS NOT PRESUMED—CONTINUOUS SESSION.—Where the record does not show affirmatively that defendant and his counsel were absent from court pending any instruction to the jury, such absence from what the record shows to have been a continuous session cannot be presumed.

ID.—SETTLEMENT OF BILL OF EXCEPTIONS—NOTICE—PRESENCE OF COUNSEL—PRESUMPTION.—Where the record shows the settlement of the bill of exceptions, but does not show affirmatively that no no-

tice of the settlement was given, or that counsel for defendant was not present at the settlement, it must be presumed that the bill was properly settled.

ID.—IRREGULARITIES IN SETTLEMENT OF BILL NOT REVIEWABLE—SETTLEMENT AFTER APPEAL TAKEN.—When it appears that the bill of exceptions was presented for settlement several months after the motion for a new trial had been made and denied, and the judgment rendered and the appeal taken from the judgment and order, and the settlement occurred more than a year after such appeal, any irregularities in the settlement could not have been reviewed on the motion for a new trial, and cannot be reviewed on the appeal, either from the order denying a new trial or on the appeal from the judgment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Wm. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

W. D. Grady, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

HALL, J.—Appellant was charged by information filed in the superior court of the city and county of San Francisco, by the district attorney of said city and county, with the crime of murder, for the killing of one J. W. McClung, on the twenty-fifth day of November, 1903. Upon his trial he was convicted of murder in the second degree. He made a motion for an arrest of judgment, and also a motion for a new trial. Both motions were denied, and he thereupon appealed from the judgment, and from the order denying his motion for a new trial, to the supreme court. The appeal was taken on the eighteenth day of October, 1904, which was before the adoption of the amendment to the constitution providing for district courts of appeal; but subsequently to the adoption of said amendment, to wit, on the twenty-fifth day of May, 1907, the appeal was by order of the supreme court transferred to this court.

Before taking up the appeal upon its merits it is necessary to dispose of a motion made by the appellant to strike from the files of this court the copy of the transcript on appeal filed

in this court as a substitute for the original transcript filed in the supreme court. This court on the twenty-eighth day of October, 1907, made an order for the substitution of the printed copy of the transcript now on file in this court in place of the original transcript which had theretofore, to wit, on the eighteenth day of April, 1906, been destroyed by fire. This order was made upon motion of the attorney general, after due notice thereof served on the appellant personally, on his attorney who took the appeal, and upon the attorney who now appears for him. Our records disclose that upon the hearing of the motion to restore the record neither one of the said attorneys appeared, but the appellant was present in person. While there is a suggestion in the brief of appellant of the reason why the attorney who now represents the appellant did not appear upon the hearing of said motion, there is nothing in the record of which we can take notice excusing his nonappearance.

Appellant does not, in support of his motion, suggest or claim that the substituted transcript is not a true and correct copy of the original, nor that the original was not in fact destroyed by the conflagration that destroyed the offices, rooms and chambers of the supreme court, of this court, and of the clerks of said courts, on the eighteenth day of April, 1906. He, however, urges as a reason for now striking from the files the substituted transcript what he claims to be deficiencies and defects in the proof of the correctness of the substituted copy, and of the destruction of the original transcript, upon which the court acted in making the order of substitution. These objections, if they have any merit, should have been presented at the hearing of the original motion for restoration of the record. Not having been made then, and no excuse for not then making them being shown, it is now too late to make such objections. If any showing were made that the original transcript had not been destroyed, or that the substituted transcript was not in fact a true copy of the original, this court would be most liberal in entertaining a motion having for its object the presenting for the consideration of the court a correct record of the proceedings to be reviewed on this appeal. But, as before observed, appellant does not suggest that the substituted transcript is not a correct copy of the original, nor that the original was not in fact destroyed. Neither has the defendant, although he is the

appellant and the party whose duty it is primarily to present to the court a record of the proceeding to be reviewed on the appeal, taken any steps to cause a restoration of the destroyed record, although more than two years have elapsed since the destruction of the original transcript. It is apparent that the granting of appellant's motion, upon the ground now being considered, will serve no purpose other than a further delay in the final determination of this case.

Appellant also contends that the transcript having been destroyed before the appeal was transferred to this court, the supreme court alone had jurisdiction to order a restoration of the record. No authority is cited to support this contention, and we see no merit in it. After the transfer, by the supreme court to this court, of the appeal, this court had complete jurisdiction thereover, and we have no doubt was the proper court to make orders, under the provisions of the act relating to the restoration of court records, approved June 16, 1906 (Stat. Extra Session, 1906, p. 73), for the restoration of the record on appeal.

The motion of the appellant to strike from the files of this court the substituted transcript is denied.

The first point urged by appellant for a reversal of the judgment and order is that George D. Collins, who represented the defendant at the trial, was not the attorney of record for the defendant. The record discloses that at the arraignment of defendant on January 11, 1904, he stated that W. D. Grady was his counsel. On the next day, January 12, 1904, upon the calling of the case, W. D. Grady, in the presence of defendant, announced to the court that G. D. Collins was associated as counsel for defendant. W. D. Grady does not appear to have participated in the actual trial of the case, but upon the calling of the case for trial the defendant was present with George D. Collins, who throughout the trial appeared and acted as attorney for defendant without objection, and apparently with his full consent. Collins cross-examined the witnesses of the prosecution and examined witnesses on behalf of defendant, and made objections and reserved exceptions on behalf of defendant. He made the motion for a new trial, and is the only attorney who signed the notice of appeal now relied on by defendant.

No formal substitution of attorneys in conformity to sections 284 and 285 of the Code of Civil Procedure appears to

have been made, but these sections have no application to a criminal case. (*Ex parte Clarke,* 62 Cal. 490.)

The entire argument of appellant upon the point is self-destructive, for if Mr. Collins was not the attorney for defendant, there is no valid appeal before this court. It is perfectly manifest that appellant was represented at the trial by counsel of his own choosing, and cannot now be heard to say that he was in any way deprived of the right to appear and defend in person and with counsel. (Const., art. I, sec. 13.)

It is next urged that the court erred in allowing to be read from the deposition of Dr. Shiels, taken at the preliminary examination of defendant, statements in the nature of "dying declarations," made by J. W. McClung. A careful reading of the record, however, discloses that such portion of the deposition of Dr. Shiels as contained any statement of Mc-Clung in the nature of a "dying declaration," or that in any manner referred to the cause of his death or the circumstances under which he received the wound from which he subsequently died, was not read to the jury. The court permitted to be read to the court, as evidence addressed to the court, certain statements made by McClung to Dr. Shiels, that tended to prove whether or not McClung believed that his death was then imminent and had abandoned all hope, but the record does not disclose that any evidence was read from the deposition, of any "dying declarations" of McClung; but, on the contrary, it quite clearly appears that no such evidence was read. For, after reading from the deposition of Dr. Shiels. a description of the wounds and condition of McClung, and what he, the witness, stated to McClung as to the fatal character of his wounds, we find the district attorney said, "There I stop, the rest not being brought under the rule of dying declaration, and an objection will be proper." It is not contended that the proper foundation had not been laid for reading the deposition of Dr. Shiels, as an absent witness, and as shown by the record there is no merit in the contention that evidence was given of any dying declaration of McClung.

The court did not err in overruling the objection to reading in evidence the deposition of Elizabeth W. Coit, taken at the preliminary examination of defendant before the police judge who held defendant to answer. No contention is made that the stenographer, who took down the evidence and proceed-

ings, was not regularly appointed, or that his certificate to the transcript of the evidence and proceedings is not in proper form, nor that it was not sufficiently shown that the witness Mrs. Coit was out of the state at the time of the trial. The certificate of the stenographer in form complies with the requirements of the statute. This seems to be conceded by appellant. The stenographer testified that he personally transcribed a portion of the notes, and dictated a portion to a typewriter; that he had compared all the transcript of the testimony of Mrs. Coit with his original notes, and that all the typewriting that was done by persons other than himself was done under his dictation and in his presence, and the entire transcript of the testimony of Mrs. Coit was compared by him with his original notes of the same, and that it was correct. The showing in this regard fully complied with the law as laid down in *People* v. *Buckley,* 143 Cal. 375, [77 Pac. 169].

Neither was the *prima facie* effect of the certificate that the transcript contained a correct statement of the evidence and proceedings overcome by the evidence that there were certain words and phrases written in longhand on the original notes by the stenographer at the time of the transcription thereof. In this regard the record shows that before the deposition was read in evidence the original notes were produced, and the stenographer testified that a large number of words and phrases appearing on said notes were written by him thereon at the time of the transcription (typewriting) thereof, but he further testified that all such words and phrases were also represented in his original notes taken at the time the witness gave her testimony. Among other things that he testified on this matter he said: ''While the typewriter was present I would read, and then I would write about it anything that was obscure or take me some little time to puzzle out, and I would make a memorandum as shorthand reporters are accustomed to do. In those instances that I put the longhand word down it correctly represented the shorthand notes that I made at the time the witnesses gave their testimony.'' We think it clear from the evidence of the stenographer that the words written on the original notes by him at the time of the transcription were represented by the original notes, and were so written by him so that he could the more readily make comparison between the transcription and the original notes. We

find nothing in this testimony that discredits the correctness of his certificate to his transcript of the evidence read in evidence.

Neither is there anything in the point that the deposition of Mrs. Coit should not have been admitted in evidence because a commission had been theretofore issued, upon application of defendant, to take the deposition of Mrs. Coit, upon interrogatories, at Paris, France. The objection that was made to reading in evidence the deposition of Mrs. Coit did not point to any such ground of objection. The fact that such a commission had issued does not appear from the bill of exceptions, nor was the attention of the court at the trial called to the fact that any such commission had been issued, or that defendant desired to introduce the deposition of Mrs. Coit taken at Paris; but, on the contrary, the bill of exceptions shows that at the calling of the case for trial both parties answered ready. Indeed, the fact that such a commission had issued only appears by a copy of certain minutes of the clerk printed in the transcript, but forming no part of the record of the action (Pen. Code, sec. 1207), and therefore not properly before us. In what we have just said we do not wish to be understood as conceding that the taking of a subsequent deposition under a commission would render inadmissible a deposition taken at the preliminary examination where the witness is absent from the state at the time of the trial. The point does not properly arise upon the record before us.

The court did not err in refusing to strike out the answer in the deposition of Mrs. Coit, "He said, 'I have shot McClung,' or 'McClung is shot,' I don't know which." The uncertainty in her testimony affected its weight but not its admissibility.

The court did not err in admitting the testimony of Mrs. Coit that tended to show that defendant disabled the telephone, connected with her apartments, immediately or very shortly after the shooting of McClung and after she had attempted to telephone for a doctor, but had been prevented by defendant. This evidence tended to prove that the shooting of McClung by defendant was not accidental, as defendant claimed, but was prompted by malice. It tended to show that after McClung was wounded, and manifestly in great need of immediate medical assistance, defendant did an act which tended to cause delay in getting such assistance. Such con-

duct was inconsistent with his defense that the shooting of McClung was accidental, and for that reason was pertinent and material.    (*People* v. *Craig,* 111 Cal. 467, [44 Pac. 186].)

The court sustained the objection of the district attorney to questions put to the witness George N. Martin for the purpose of showing that Mrs. Coit had made statements to him inconsistent with the evidence read from her deposition. There was no error in this.    No foundation had been laid for the impeachment of Mrs. Coit as required by section 2052, Code of Civil Procedure.    The fact that her testimony was read from her deposition taken at the preliminary examination does not alter the rule.    (*People* v. *Compton,* 132 Cal. 484, [64 Pac. 849] ; *People* v. *Witty,* 138 Cal. 576, [72 Pac. 177] ; *People* v. *Pembroke,* 6 Cal. App. 588, [92 Pac. 668].)

For the same reason the court properly sustained the objection of the district attorney to the reading in evidence of the testimony given by Mrs. Coit at the coroner's inquest.    No foundation had been laid therefor as required by the section of the code above referred to.

Appellant urges that the evidence "is insufficient to establish the crime of murder in the second degree, inasmuch as there is a total lack of evidence to establish malice aforethought, express or implied."    With this contention we cannot agree.    It is sufficient to say that although defendant claimed that the shooting was accidental, the evidence was amply sufficient to justify the conclusion that it was intentional.    And if it was intentional it certainly was, under the evidence disclosed in the record, without any "considerable provocation."    Under such circumstances malice is implied. (Pen. Code, sec. 188.)

Appellant in his brief attacks but one instruction, as follows: "If you find to a moral certainty and beyond a reasonable doubt that the revolver introduced in evidence in this case was discharged at the time mentioned, and that the defendant was engaged in the commission of an unlawful act at such time, then as a matter of law he will not be relieved from responsibility for any result which may have followed such discharge, even though such revolver was at such time discharged accidentally."

This instruction is not a clear and correct statement of any principle concerning the law of homicide.    It ignores the question as to whether or not the discharge of the pistol was

caused by an unlawful act of defendant. Under this instruction defendant would not be relieved of responsibility for results from the accidental discharge of the pistol, if it were accidentally discharged, at the time he was engaged in doing an unlawful act, regardless of whether or not the unlawful act had any connection with the discharge other than in point of time. The instruction should not have been given. It is inaccurate, to say the least, as a statement of any principle of the law of homicide. Yet it does not necessarily follow that any prejudicial error was committed in the giving of this instruction when the entire charge of the court is considered, as well as the status of the evidence. According to all the evidence, including that given by the defendant himself, the pistol was drawn by himself, and was discharged while in his hand and while he was engaged in a struggle with McClung. About these facts there was no dispute, but the defendant testified that he did not intentionally discharge the pistol, but that the same was accidentally discharged while he and McClung were struggling together.

It will be observed that in this instruction the court does not tell the jury that under the circumstances indicated in the instruction any verdict of guilty should be returned. But, on the contrary, the court, at the request of the defendant, instructed the jury "that if you believe from the evidence before you that the deceased was killed from the accidental discharge of the revolver in evidence here, your verdict must be that the defendant is not guilty. If you have a reasonable doubt upon the subject you must give the defendant the benefit of the doubt and return a verdict that he is not guilty." In the face of this clear and explicit instruction, calling for a verdict of not guilty if deceased was killed by the accidental discharge of the pistol, it is impossible to believe that the jury could have been misled to the prejudice of defendant by the vague and practically meaningless statement of the first instruction. (*People* v. *Lee Sare Bo,* 72 Cal. 623, [14 Pac. 310].) In other parts of its charge the court gave full and complete instructions as to what constitutes murder, both of the first and second degree, and a full and accurate statement of what constitutes manslaughter, both voluntary and involuntary. After giving the definition of murder according to section 187 of the Penal Code, the court fully and correctly stated the requisites for murder of the first degree as given

in section 189, Penal Code, followed by the statement that all other kinds of murder are of the second degree. The court then charged the jury that in murder of the second degree "the act of killing must be committed with a felonious purpose and accomplished by felonious means."

The instructions as a whole, especially touching the killing by the accidental discharge of the pistol, were quite as favorable to defendant as the law would permit. Under such circumstances a verdict of guilty should not be set aside because of too general statements contained in a vague and meaningless instruction such as is here attacked. (*People* v. *Tomlinson*, 66 Cal. 344, [5 Pac. 509]; *People* v. *Lee Sare Bo*, 72 Cal. 623, [14 Pac. 310]; *People* v. *Ah Jake*, 91 Cal. 98, [27 Pac. 595]; *People* v. *Leonard*, 106 Cal. 302, [39 Pac. 617]; *People* v. *Weber*, 149 Cal. 325, [86 Pac. 671].)

The attorney for appellant contends that the record shows that the court gave some instructions to the jury in the absence of defendant and his counsel. In this we think counsel, who is not the attorney who represented defendant in the trial court, is in error. The "minutes of the trial," which are a part of the record (Pen. Code, sec. 1207), show that the court convened on Wednesday, August 31, 1904, and that the judge and other officers of the court, the defendant and counsel for all the parties, were present. After argument by the attorney for defendant, the court took a recess until 1:30 P. M. of the same day. At 1:30 P. M. court convened and the trial of the cause was resumed, "the defendant and all the parties being present as heretofore." The minutes of the trial under this date further show that after the closing of the arguments the court charged the jury, and they retired to deliberate on their verdict at 3:40 P. M., and subsequently at 9:45 P. M. returned into court, and desired further instructions, which the court gave and which were taken down at the time by the official reporter, "counsel for the respective parties expressly waiving written instructions." It is these instructions that counsel now claim the record shows were given in the absence of the defendant and his counsel. But we think the "minutes of the trial" show otherwise, for from these minutes it appears that at the convening of the court at 1:30 P. M. of August 31, 1904, all parties were present, and it does not appear that the court took any recess after the jury first retired until they returned at 9:45 P. M. for further

instructions. The court apparently remained in session waiting for the return of the jury. The record showing that defendant and his counsel were present at the convening of the court at 1:30 P. M., we cannot assume that they absented themselves thereafter during what on the record appears to have been a continuous session, without an affirmative showing to that effect.

Appellant also urges that notice was not given to counsel of defendant of the time when the judge would settle the bill of exceptions. The record, however, does not affirmatively show that such notice was not given, or that counsel for defendant was not present. In the absence of a showing to the contrary we must presume that the bill was properly settled. (*People* v. *Ah Foo,* 4 Cal. App. 743, [89 Pac. 450].) Furthermore, the irregularity complained of is not a ground for a new trial or for reversing the judgment. The bill of exceptions was presented for settlement several months after the motion for a new trial had been made and denied, and the judgment rendered and the appeal taken from both judgment and order. The settlement of the bill of exceptions occurred more than a year after the taking of this appeal. Manifestly, any irregularities that occurred in the settlement of such bill could not have been reviewed on the motion for a new trial, and cannot be reviewed on the appeal from the order denying such motion or on the appeal from such judgment.

Some other exceptions concerning the rulings of the court upon the admission of evidence have been called to our attention, but none of them are of sufficient importance to require discussion.

We are satisfied that no error prejudicial to any substantial right of the defendant has been committed by the trial court.

The judgment and order are affirmed.

Kerrigan, J., and Cooper, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 3, 1908.