[Crim. No. 149.    Third Appellate District.—April 18, 1911.]

THE PEOPLE, Respondent, v. P. MULLALEY, Appellant.

CRIMINAL LAW—VERIFICATION OF COMPLAINT BY NOTARY—LEGAL COMMITMENT.—A complaint before a magistrate may be verified and attested by anyone authorized to administer oaths; and since a notary public has general authority under section 2093 of the Code of Civil Procedure to administer oaths, the verification of such a complaint by such a notary is legal; and a motion to set aside the information for want of a legal commitment under such complaint, owing to the absence of a legal verification thereof, cannot be sustained.

ID.—WAIVER OF OBJECTION AFTER EXAMINATION AND COMMITMENT.—Even if the complaint were deemed illegal, an objection thereto cannot avail after a regular preliminary examination and commitment of the defendant.

ID.—ABSENCE OF WITNESS FROM STATE—DEPOSITION AT PRELIMINARY EXAMINATION—INSUFFICIENT OBJECTIONS.—Where the absence of a witness from the state is shown, and due diligence to obtain his evidence is conceded, and his deposition taken at the preliminary examination is relied upon, it is held that the objections urged thereto are insufficient and untenable.

ID.—APPOINTMENT OF REPORTER.—An objection that it does not appear that the reporter was appointed by the justice to take the testimony is held to be untenable in fact, since it appears that such appointment was made.

ID.—REPORTER NOT SWORN—SILENCE OF RECORD—PRESUMPTION—OATH
NOT REQUIRED.—The objection that it does not appear that the re-
porter was sworn is met by the presumption, if the matter were
material, that the oath was administered. But, since it appears that
he was the official reporter of the court, it was not necessary that he
be sworn.

ID.—TIME FOR FILING TRANSCRIPT—DIRECTORY PROVISION—REASONABLE
TIME—PRESUMPTIONS.—Though it does not appear when the orig-
inal transcript was filed, yet it must be presumed that it was filed
in due time. It being settled that the statutory designation of time
is directory merely, it is held sufficient that the filing was in reason-
able time, which must be presumed not to have elapsed when the
transcript was filed, in the absence of any showing to the contrary.

ID.—WAIVER OF OBJECTION NOT URGED TO DEPOSITION.—Appellant is
deemed to have waived every objection to the admissibility of the
deposition not urged by him.

ID.—GRAND LARCENY—ASPORTATION OF CALF—BELIEF OF OWNERSHIP—
ASSUMPTION AFTER OFFENSE.—Where defendant was charged with
grand larceny in the asportation of a calf, his belief, under proper
circumstances, that the calf belonged to himself and his cousin at
the time of the asportation would be admissible as an important
element in the case; yet where he denied that he ever saw the calf,
or had anything to do with it, that is inconsistent with any belief
as to its ownership when it was taken. But when, in addition to
the objectionable form of the question, it related only to defendant's
"assumption" as to its ownership at a time subsequent to the com-
pletion of the offense, it would be no defense to the charge, and
was properly rejected.

ID.—IMMATERIAL EVIDENCE—OPEN SALE OF MEAT—ROUTE TAKEN BY
SELLER.—Where the evidence clearly shows that the meat of the
slain calf was sold by a third party openly at a town, the question
as to the directness of his route thereto asked by the appellant was
properly disallowed, as having no bearing upon the question of his
guilty knowledge.

ID.—STATEMENTS OF SELLER AT TIME OF SALE—RES GESTAE—IMPEACH-
MENT NOT ALLOWED.—The statements of the seller of the meat at
the time of the sale were not admissible as any part of the *res gestae*
of the offense, which had been fully completed; nor could he thereby
be impeached when no foundation for such impeachment had been
laid by previous questions calling his attention to the same.

APPEAL from a judgment of the Superior Court of Colusa
County, and from an order denying a new trial. H. M.
Albery, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, and Ernest Weyand, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

BURNETT, J.—Defendant was convicted of the larceny of a yearling bull and sentenced to the penitentiary for the term of three years.

1. There is no merit in the contention that the court should have set aside the information for the reason that the complaint filed in the justice court was verified before a notary public. Every notary public has power to administer oaths or affirmations. (Code Civ. Proc., sec. 2093.) And, since the statute does not designate any particular officer before whom the complaint must be verified, it necessarily follows that the verification may be attested by anyone authorized to administer an oath. (*Dunn* v. *Ketchum,* 38 Cal. 99.) Every clerk of any court is placed upon the same footing in this respect as a notary, and it has been held that, under the authority given by said section 2093 of the Code of Civil Procedure, the clerk of a police court has authority to administer an oath to a person verifying a complaint, and a motion to set aside an information based thereon, for want of a legal commitment under such complaint, owing to the absence of a legal verification thereof, cannot be sustained. (*People* v. *Vasalo,* 120 Cal. 168, [52 Pac. 305]; *People* v. *Burns,* 121 Cal. 529, [53 Pac. 1096].)

Besides, if the verification had been illegal, the objection could not avail after a regular preliminary examination and commitment of the defendant. (*People* v. *Gregory,* 8 Cal. App. 738, [97 Pac. 912].)

2. Edward de St. Maurice, the official reporter of the superior court of Colusa county, took in shorthand the testimony and proceedings at the preliminary examination, and thereafter transcribed and filed the same with the clerk of said superior court. During the trial the prosecution made proper showing that one Charles Schnitter, who had testified at the preliminary examination, could not be found in the state and, upon attempting to offer the deposition of said witness, it appeared that the original transcript of the proceedings at the preliminary examination had disappeared and could not

be found. The district attorney then stated: "At this time,
I have had certified this transcript by the official reporter
as a true copy of the testimony taken in the case." The re-
porter was then examined by counsel for defendant and testi-
fied that there were three copies of the testimony at the pre-
liminary examination made, that the original was filed with
the clerk, one copy delivered to the district attorney and the
other delivered to defendant's attorney and that they were
all alike. An objection was then made to the offer of the
deposition on the grounds that due diligence had not been
shown in attempting to serve the witness, that it did not
appear that Mr. de St. Maurice was appointed as reporter of
the justice court in the case against the defendant, that it
was not shown that the reporter was sworn to take the testi-
mony, or that the transcript was filed in the superior court
within ten days after the defendant was held to answer.
There was no contention that a copy of the deposition could
not be received, or no question raised as to it being an exact
copy of the original, counsel stating: "I desire that my ob-
jection should run to the question of the certificate of the
reporter, showing exactly what was done. In other words, I
am willing that this be considered in the same place as the
original was, whenever that was filed. I don't care when that
was. My objection does not run to any question of that kind.
In other words, I understand they have a right to substitute
a paper when one is lost."

It is clear that all the objections urged to the admissibility
of the deposition are entirely without merit. With commend-
able candor it is, indeed, admitted by appellant that "the
prosecution did make a sufficient showing of the absence of
the witness and of efforts made in good faith to procure his
attendance."

The other objections may be disposed of as follows: It
appears that the said de St. Maurice was appointed by the
justice as reporter to take the testimony. The record is silent
as to whether he was sworn. Therefore, if the matter was
material, the presumption would be that the oath was admin-
istered, but since it appears that he was the official reporter
of the court, it was not necessary that he be sworn. (*People
v. Riley*, 75 Cal. 98, [16 Pac. 544].) The record also shows
that the original transcript was properly certified, as the re-

porter testified that the one substituted therefor was an exact copy of the original and the certificate attached to said substitute is unobjectionable in form.

It does not appear just when the original was filed, and therefore the presumption would be that it was filed within the statutory time. (*People* v. *Witty,* 138 Cal. 578, [72 Pac. 177].) Besides, it is settled that the specification as to time (Pen. Code, sec. 869, subd. 5) is directory merely, and that if the filing be within a reasonable time it is sufficient. (*People* v. *Buckley,* 143 Cal. 381, [77 Pac. 168].) As before indicated, there is nothing to show that an unreasonable time elapsed.

Appellant is deemed to have waived any other ground of objection to the admissibility of said deposition. (*People* v. *Garnett,* 9 Cal. App. 200, [98 Pac. 247]; *People* v. *Buckley,* 143 Cal. 381, [77 Pac. 168].)

3. The defendant was asked this question by his counsel: "I will ask you again what you assumed on the 24th and 25th when you knew that there was a calf killed on the place? What did you assume about that calf and the ownership of that calf?" And again: "I will ask you if, on the 24th and 25th of March, when you knew that a calf was killed there, whether or not it is a fact that you assumed that that calf was Jack Mullaley's?" An objection to each of these questions was sustained. It is admitted by appellant that the form of the questions asked is not free from criticism. This is undoubtedly true, as the defendant's assumption would be no defense, since it might be contrary to his knowledge or belief. But it is claimed that "If the circumstances under which these cattle came upon defendant's premises and were driven from his grain were such that he had reason to believe that they belonged to himself and his cousin Jack, he had a right to lay that before the jury, and refusal to permit him to do so was the denial to him of a legal right." In a case like this, a party, really believing that property asported by himself or under his direction, was his own, would not be guilty of larceny, since the felonious intent would be absent. His belief is an important element in the case, and, under proper circumstances, he should be permitted to state what he believed at the time of the alleged commission of the offense as to the ownership of the property. The jury, of course,

would not be bound by his statement, but it should be considered with the other evidence in the case. But here, in addition to the objectionable form of the question, it appears that it related to a time subsequent to the commission of the offense. What he may have assumed after the offense was complete would be no defense to the charge, and if intended to explain his subsequent conduct the questions should have been directed specifically to the conduct which it was sought to explain.

But, again, the defendant testified that he never saw the calf and never gave Schnitter any directions in reference to it, and knew nothing of the killing until he was told of it afterward. He could have had no belief, therefore, as to the calf at the time it was taken. Another complete answer to the whole proposition is that the witness had already testified that he considered the calf the property of his cousin Jack. He said: "Well, I didn't know anything about the killing of the calf much. Jack and me talked it over once, and I didn't pay any attention to it as long as he didn't, and we didn't think it worth while to talk about it. He considered it his calf, and I did too, until George Lenning told me I was going to be arrested."

4. The court committed no error in sustaining the objection of the district attorney to the following question asked by appellant of the witness Harry Brooks: "Is the route around by the way where your dwelling-house is, and where you were when you met Schnitter, as direct a route to the town of Arbuckle as another route to that town?" The purpose was to show, so it is claimed, that Schnitter was in a clandestine manner seeking to dispose of the meat and thereby to discredit his statement that he had no reason to believe that the calf was stolen. But there is no contention that one route was more secluded than the other or that there was any secrecy whatever in his disposition of the meat. In fact, the carcass was openly sold, as the evidence all shows, and whether Schnitter took the most direct route to town would have no bearing upon the question of his guilty knowledge.

5. Likewise, the court's ruling was correct in sustaining an objection to questions asked of witnesses as to statements made by Schnitter when he sold the meat. This was no part of

the *res gestae,* as the offense had been fully completed (*People* v. *Petruzo,* 13 Cal. App. 577, [110 Pac. 324]), and Schnitter could not in that manner be impeached, as his attention was not called to the alleged statements. (*People* v. *Garnett,* 9 Cal. App. 200, [98 Pac. 247], and cases therein cited.)

Appellant does not claim that the evidence is insufficient to support the verdict, and none of the points made would justify us in interfering with the judgment and order of the court, and they are, therefore, affirmed.

Hart, J., and Chipman, P. J., concurred.