Filed 4/28/23  P. v. McCoy CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LORENZO ANTHONY MCCOY,<br><br>    Defendant and Appellant. | C096387<br><br>(Super. Ct. No. 20FE019497) |

Defendant Lorenzo Anthony McCoy drew a gun during an argument with Onaje Lynch and the gun fired, killing Lynch.  At trial, the jury was instructed on excusable homicide by accident, which required defendant to have been acting lawfully when the accident occurred.  The jury found defendant guilty of second degree murder and found true that he personally used a firearm.  The trial court sentenced defendant to 15 years to life for the murder conviction and 10 years for the firearm enhancement.

On appeal, defendant alleges two errors:  (1) the accident instruction misstated the law by requiring defendant to have been acting lawfully; and (2) the trial court abused its discretion in not dismissing the firearm enhancement.  We disagree and will affirm.

1

# BACKGROUND

Defendant was charged with murder (Pen. Code, § 187, subd. (a))[1] and being a felon in possession of a firearm. (§ 29800, subd. (a)(1).) Three firearm enhancements were also alleged for the murder charge (§§ 12022.5, subd. (a), 12022.53, subds. (b)-(d)) and five factors in aggravation were alleged for sentencing purposes.

At defendant's trial, several witnesses testified to seeing defendant and Lynch argue in a parking lot where they both sold drugs. Lynch was shot during the argument and defendant walked away. Police officers found Lynch dead at the scene and the coroner later determined he died from a gunshot wound to his head from a bullet entering his jaw at his chin and traveling upwards to the back of his head. He also had a gunshot wound to his right hand and it was possible the same bullet caused both injuries.

A surveillance video from a nearby restaurant played at trial showed defendant and Lynch arguing. Defendant then pulled a gun out of his pocket, got close to Lynch with the gun, smoke is then seen between the two, and Lynch falls. Defendant immediately turns around and walks away.

Defendant testified he had a gun that day but did not intend to shoot Lynch. Lynch told defendant's girlfriend earlier in the day that she and defendant could no longer sell drugs in that parking lot. When the girlfriend told defendant this, defendant went to the parking lot and got into an argument with Lynch. Defendant admitted to pulling out his gun, but only did so to protect himself and to scare Lynch. He had the gun cocked "just in case," and pointed it at Lynch's chest to show him he was serious. But Lynch tried to grab the gun and punch defendant and the gun fired. Defendant said the gun did not have a trigger guard, which prevents the trigger from being pulled, and he did not have his finger on the trigger when he confronted Lynch. Defendant was surprised

---

[1] Undesignated statutory references are to the Penal Code.

2

when the gun went off but left the scene because he was not permitted to have the gun. He said he regretted what happened, but "[i]t was [an] accident."

For the first charge, the trial court instructed the jury on first degree murder, second degree murder, justifiable homicide by self-defense, excusable homicide by accident, voluntary manslaughter by heat of passion, voluntary manslaughter by imperfect self-defense, and involuntary manslaughter. For first and second degree murder, the instruction under CALCRIM No. 520 stated the jury must find defendant acted with malice, meaning he either had the intent to kill or intentionally acted knowingly and deliberately with conscious disregard for human life. The accident instruction under former CALCRIM No. 510 stated defendant was not guilty "of murder or manslaughter if he killed someone as a result of accident or misfortune. Such a killing is excused, and therefore not unlawful, if: [¶] 1. The defendant was doing a lawful act in a lawful way; [¶] 2. The defendant was acting with usual and ordinary caution; [¶] AND [¶] 3. The defendant was acting without any unlawful intent." The jury was also instructed on personal use of a firearm, intentional discharge of a firearm, and intentional discharge of a firearm causing death. For the personal use instruction, under CALCRIM No. 3146, the jury had to find defendant intentionally: (1) displayed the weapon in a menacing manner; (2) hit someone with the weapon; or (3) fired the weapon.

On March 30, 2022, the jury acquitted defendant of first degree murder but found him guilty of second degree murder. The jury also found true that defendant personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)), but found not true that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and that he personally and intentionally discharged a firearm causing death. (§ 12022.53, subd. (d).) The parties also stipulated to defendant being a felon in possession of a firearm, so the jury also found him guilty of this charge.

At sentencing, defense counsel requested the trial court dismiss the firearm enhancement because section 1385 states the enhancement "shall be dismissed" if the

3

sentence is over 20 years, so "[m]y position is that the word 'shall' is very clear in this. The Court shall because the sentence would result in a sentence of over 20 years." The prosecutor argued the trial court still had discretion to not strike the enhancement and it would not be in the interest of justice to strike it because defendant's behavior was an extreme danger to public safety. The trial court noted, "[I]t's obvious the firearm was used in the most lethal and dangerous way," that the jury found defendant acted with implied malice, but that it also did not find defendant intentionally discharged the firearm. Still, the court concluded it did have discretion to decline to dismiss the enhancement, and further concluded it would not be in the interest of justice to strike the enhancement. The trial court then sentenced defendant to 15 years to life for the murder conviction, the middle term of two years for the felon in possession of a firearm conviction, stayed under section 654, and an additional 10 years for the firearm enhancement.

DISCUSSION

I

*Accident Instruction*

Defendant first contends the accident instruction was legally invalid because it required the jury to find defendant was acting lawfully, which is not a legal requirement for an accident defense. Defendant concedes he was not acting lawfully because he was not permitted to possess a firearm. But he argues this should not make the accident defense out of reach. He further argues that this error was not harmless, and he suffered ineffective assistance of counsel because his counsel did not request modifications to the instruction. The People argue there was no reasonable likelihood the jury was misled by the instruction because it found defendant guilty of second degree murder, necessarily finding defendant acted with implied malice. We find the People's position more persuasive.

4

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.]" ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) But, "[e]ven if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly." (*People v Castillo* (1997) 16 Cal.4th 1009, 1015.) "Whether a jury instruction correctly states the law is reviewed de novo. [Citation.]" (*People v. Koenig* (2020) 58 Cal.App.5th 771, 795.)

Two statutes circumscribe the accident defense. Under section 26, a person is not capable of committing a crime if they "committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." Under section 195, subdivision 1, homicide is excusable "[w]hen committed by accident and misfortune, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."

Former CALCRIM No. 510, as provided at defendant's trial, summarized these requirements in providing the homicide was excusable if the killing was the result of accident or misfortune *and* the defendant was (1) doing a lawful act in a lawful way; (2) acting with usual and ordinary caution; and (3) acting without any unlawful intent. (CALCRIM former No. 510 (2020).) The Judicial Council of California (JCC) recently modified CALCRIM No. 510 to state the defense can be established if the defendant killed someone by accident and misfortune, regardless of whether it was during a lawful act done with usual and ordinary caution without a lawful intent. (CALCRIM No. 510.) The JCC explained the lawful requirement was originally derived from *People v. Gorgol* (1953) 122 Cal.App.2d 281, which stated, " 'Misfortune' when applied to a criminal act is analogous with the word 'misadventure' and bears the connotation of accident while doing a lawful act. [Citation.]" (*Id.* at p. 308; Jud. Council of Cal., Advisory Com. Rep.,

5

Crim. Jury Instns., Mar. 11, 2022, pp. 4-5
[<https://jcc.legistar.com/View.ashx?M=F&ID=10537506&GUID=0581B025-AB47-4E81-9694-89A8C8F8B587> [as of Apr. 28, 2023], archived at
<https://perma.cc/WK9W-RKPU>.) However, an even earlier case, *People v. Garnett* (1908) 9 Cal.App. 194, found an accident instruction incorrectly stated the law because it did not relieve the defendant of responsibility if "at the time he was engaged in doing an unlawful act." (*Id*. at p. 204.) The JCC stated it "ultimately determined that the language in *Gorgol* is not controlling authority for this instruction and redrafted the instruction to accord with the statutory structure and the holding in *Garnett*." (Jud. Council of Cal., Advisory Com. Rep., Crim. Jury Instns., *supra*, at pp. 4-5.)

Defendant contends the modifications and the underlying reasoning establish the instructions given at his trial were legally incorrect. But we need not wade into the murk of century-old case law to determine whether sections 26 and 195 require the accidental act to be done lawfully because any error here was harmless. Even under the more stringent *Chapman*[2] standard for structural errors, it is clear "beyond a reasonable doubt that the error did not contribute to this jury's verdict." (*People v. Flood* (1998) 18 Cal.4th 470, 504; *id*. at pp. 502-504 [*Chapman* standard is applied to instructional errors amounting to structural errors].)

The accident defense is "raised to rebut the mental element of the crime or crimes with which the defendant was charged." (*People v. Anderson* (2011) 51 Cal.4th 989, 998.) Because this is a fundamental element of the offense, our Supreme Court in *Anderson* found courts do not have a duty to give the accident instruction sua sponte, "assuming the jury received complete and accurate instructions on the requisite mental element of the offense." (*Ibid*.) Such is the case here. The jury was properly instructed

---

**2**  *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].

on the mental element of murder and found defendant acted with malice when it found defendant guilty of second degree murder. So, even assuming the jury did not apply the accident defense because defendant was not acting lawfully at the time, it necessarily would not have applied the instruction even if the unlawful requirement was not included because it found defendant had the requisite mental state for murder.

This point is made clearer by addressing defendant's additional argument that the gun enhancement findings indicate the jury would have found defendant acted accidentally. He reasons because the jury did not find defendant intentionally discharged the gun, it is possible the jury would have found he acted accidentally. These enhancement findings do indicate the jury did not believe defendant pulled the trigger intentionally, but that does not mean he acted without malice. The jury did find true that defendant personally used the firearm, and for that, he, at a minimum, intentionally displayed the weapon. (CALCRIM No. 3146.) And "[a]n unintentional shooting resulting from the brandishing of a weapon can be murder if the jury concludes that the act was dangerous to human life and the defendant acted in conscious disregard of life." (*People v. Thomas* (2012) 53 Cal.4th 771, 814-815.) Again, that is the case here. Even if the act of pulling the trigger might have been accidental, the jury must have determined defendant acted with malice when he pointed a knowingly faulty gun at the victim in close range during an argument. (See *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 110 ["Even if the act results in a death that is accidental, as defendant contends was the case here, the circumstances surrounding the act may evince implied malice"].)

This conclusion is consistent with a case defendant relies on: *People v. Jones* (1991) 234 Cal.App.3d 1303. There, the defendant drew a shotgun on a police officer, and when the officer knocked the gun away, it fired and struck the officer. (*Id*. at p. 1308.) The appellate court found the trial court erred in failing to provide an accident instruction sua sponte, but the appellate court concluded this error was harmless because the jury was properly instructed on the intent requirement for attempted murder. Because

7

the jury found the defendant guilty of attempted murder, it "implicitly resolv[ed] the question of [the accident] defense adversely to defendant." (*Id*. at p. 1316.) The Supreme Court disapproved of *Jones* in *Anderson* but only to the extent *Jones* found trial courts are required to provide accident instructions sua sponte. (*People v. Anderson, supra*, 51 Cal.4th at p. 998, fn. 3.)

In short, because the jury was properly instructed on the intent requirement for second degree murder, and the jury found defendant guilty of second degree murder, any instructional error on the accident defense was harmless.[3]

II

*Gun Enhancement Sentence*

Defendant next argues the trial court abused its discretion in not dismissing his gun enhancement because it would result in a sentence exceeding 20 years. This, he contends, violated section 1385. Defendant also argues the trial court relied on the gun having been used in the killing to justify not striking the enhancement, but the jury had to also rely on this fact to find him guilty of second degree murder, violating the rule against dual use of facts in sentencing. The People argue defendant forfeited this argument and, in any case, the trial court did not abuse its discretion.

Defendants must generally raise challenges at sentencing to preserve the issue for appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 357 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].) Defendant provides no argument for why we should not apply this rule here, even though the People argue forfeiture. We find application of the forfeiture rule appropriate here.

---

**3** Finding any error harmless, we need not address defendant's secondary contention he suffered ineffective assistance of counsel.

Section 1385 requires courts to dismiss enhancements if it is "in the furtherance of justice to do so." (§ 1385, subd. (c)(1).) The statute also provides, "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) One such mitigating factor is if "[t]he application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(C).) Courts have found the "shall be dismissed" language within the mitigating factors does not eliminate the trial court's ultimate discretion to not dismiss an enhancement under section 1385. (See *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297 ["For all of the foregoing reasons, we reject [the defendant's] interpretation of section 1385[, subd.] (c)(2)(C) as requiring a court to dismiss every enhancement resulting in a sentence of greater than 20 years regardless of whether dismissal would endanger public safety"]; *People v. Walker* (2022) 86 Cal.App.5th 386, 396 ["concluding that the phrase 'all enhancements beyond a single enhancement shall be dismissed' in subdivision (c)(2)(B) [of section 1385] does not obligate trial courts to automatically dismiss all but one enhancement whenever a jury finds multiple enhancements to be true"], review granted Mar. 22, 2023, S278309.)

At sentencing, defendant's arguments against imposition of the firearm enhancement focused exclusively on a complete lack of discretion based on the "shall be dismissed" language of section 1385. He abandons this position on appeal, conceding a "trial court retains discretionary authority to strike a firearm enhancement." Instead, he now challenges the basis for the court's discretionary decision, arguing 25 years is too long of a sentence, a 15-year-to-life sentence would have a "significant impact" on him given his age and medical conditions, after serving 15 years he "would have no desire to

9

commit a new offense and return to prison," and "the circumstances of the shooting were unique and were not likely to reoccur." But he did not first present these arguments to the trial court even though the prosecution argued the trial court had discretion and there were factors in favor of not exercising its discretion. (*People v. de Soto* (1997) 54 Cal.App.4th 1, 9 ["defendant's general objections did nothing to give the trial court a meaningful opportunity to correct any sentencing errors"].)

Defendant also emphasizes the trial court violated the prohibition against dual use of facts to enhance a sentence because his conviction was based on his use of a gun and the trial court also used this fact to not strike the enhancement. But the forfeiture principle also applies to this argument because he could have, and should have, presented this argument to the trial court at sentencing. (*People v. Scott, supra*, 9 Cal.4th at p. 357, fn. 19 [recognizing the forfeiture rule extends to "dual-use claims"].) Defendant therefore forfeited his challenge to the trial court's discretionary decision to not strike the firearm enhancement.

DISPOSITION

The judgment is affirmed.

                                        KRAUSE        , J.



We concur:



    ROBIE        , Acting P. J.



    RENNER        , J.

10