The People of the State of New York, Respondent, *v.* Alfred Souza Caverio, Appellant.

Third Department, July 8, 1955.

*James E. Gavagan* for appellant.

*Russell G. Hunt, District Attorney (George N. Meyl* of counsel), for respondent.

HALPERN, J. The defendant was indicted for the crime of attempted murder in the first degree and he was convicted of that charge.

The tragic events which led to the charge all took place in Albany, New York, during the afternoon and evening of July 22, 1953. The defendant was a young man twenty-three years of

age. He had had little schooling and, after his discharge from military service in Korea, he found employment as a laborer. On the day in question, at about 2:00 P.M., he had a quarrel with his wife and left the house in anger. Instead of going to work, he stopped for a few glasses of beer. He then went to a moving picture theater from which he emerged at about 3:30 P.M. From that time to about nine o'clock in the evening, he drank beer more or less continuously at a large number of taverns. While he testified that he thought that he knew what he was doing all evening, he said that he felt '' gay '' and there can be little doubt that he was intoxicated.

About 10:30 P.M., while the defendant was walking around trying to sober up, he came upon a young girl who was wheeling a baby carriage in front of her home and the defendant '' grabbed [her] arm and tried to get [her] into the house ''. She called for help and her father, a minister, came to her rescue. The defendant thereupon struck him in the face and kicked him in the groin and knocked him against a parked car. A man sleeping in the parked car jumped out and the defendant then struck him. When the minister's wife attempted to stop the fight, the defendant attacked her. Several others joined the fight and the defendant took off his belt and swung the belt around him, hitting one man in the mouth with the belt buckle and knocking out a tooth. Shortly therafter, the police arrived and the defendant was placed in the police car and taken to the police station.

The defendant was charged with disorderly conduct and subsequently additional charges were placed against him for assault upon the minister and his wife.

The defendant was booked at the police station at 11:05 P.M. He was locked in one of the cells of a cell block in the station house. The defendant was in a state of wild excitement and persisted in creating a disturbance. He demanded that he be allowed out of the cell to telephone his wife. He cursed and yelled loudly and shook the bars of the gate of his cell repeatedly to attract attention and kicked the gate in an effort to make more noise. He also repeatedly struck his head against the steel plates forming the wall of the cell.

There is a dispute as to what took place thereafter. The proof by the People's witnesses, was as follows: The sergeant on duty in the police station directed a patrolman to see what the trouble was. The patrolman reported that the defendant was hitting his head against the steel sides of the cell and was swinging his shoes about his head and shouting threats: '' Get

out of here you * * * or I'll kill one of you * * * policemen ''. He reported to the desk sergeant that he was unable to quiet the defendant and the sergeant then asked Sergeant Dunney to talk to him to try to quiet him down. Sergeant Dunney talked to the defendant through the bars of the gate but was unable to quiet him. He concluded that the defendant was mentally disturbed and that he ought to be taken to a hospital equipped to deal with such persons. At the sergeant's request, a patrolman got a key to the cell block and pulled the lever which controlled the gate of the cell in which the defendant was confined. Sergeant Dunney then pushed the gate open and entered the cell. As he did so, the defendant shouted " Get out of here or I'll get you " and threw his shoes at the sergeant. The sergeant dodged the shoes and the defendant then made a flying dive, catching the sergeant about the waist. The sergeant got a headlock on the defendant and they wrestled about in the cell. In the course of the struggle, the sergeant's belt, carrying his holster and revolver, swung around so that the revolver came within the defendant's reach. The defendant thereupon pulled the revolver from the holster and shot the sergeant three times. (The safety clip of the sergeant's holster had been broken two or three years earlier and the sergeant had not had it repaired.)

When the other officers entered the cell, they found the sergeant on top of the defendant holding him down but the defendant still had the gun in his left hand. One of the officers, pursuant to the sergeant's direction, took the gun and struck the defendant on the head with the butt of the gun and rendered him unconscious.

The defendant's version of the occurrence was a very different one. He testified that Sergeant Dunney had told him before he entered the cell that, if he, the defendant, did not quiet down, he would give him something to yell about and that the defendant had replied that " he wasn't big enough ". Thereupon, Sergeant Dunney had the cell gate unlocked and entered the cell and, as he did so, the defendant threw his shoes at him. The defendant claims that the sergeant then drew his revolver and held it by the barrel and advanced toward the defendant. The defendant thereupon dove at the sergeant, grabbed him about the waist and they went down to the floor, struggling. According to defendant, the sergeant was holding the gun by the barrel and the defendant had " ahold of the handle " and the sergeant was trying to get the gun free so that he could use it as a club. While they were struggling, the **revolver** went off **three** times.

It thus appears that it was the defendant's contention that he had initially engaged in the struggle in self-defense and that, in the course of the struggle, the revolver had gone off accidentally. The People, on the other hand, contended that there never had been any occasion for self-defense and that the defendant had been the aggressor in the attack. This issue was resolved by the jury in favor of the People and, since that portion of the jury's findings is supported by the evidence, no further consideration need be given to the claim of self-defense.

The jury found the defendant guilty of attempted murder in the first degree as charged in the indictment and the defendant was sentenced to a term of nine to twenty years.

The defendant's claim of self-defense having been rejected by the jury, the jury would unquestionably have been justified in finding the defendant guilty of some kind or grade of crime, but the crucial question in this case is whether the jury was justified in finding the defendant guilty of an attempt to commit the most serious crime under the law, the crime of murder in the first degree. The trial court had also submitted to the jury the crime of assault in its various degrees. If the defendant had been convicted of assault in the first degree, the maximum sentence would have been five to ten years and if he had been convicted of assault in the second degree it would have been two and one-half to five years.

The heavy sentence imposed upon the defendant thus rests upon the jury's finding that the defendant was guilty of the crime of attempted murder in the first degree which requires proof that the attempt was committed " From a deliberate and premeditated design to effect the death of the person killed " (Penal Law, § 1044, subd. 1).

As I analyze the case, there are two principal questions upon this appeal: (1) whether the finding of deliberation and premeditation by the jury was supported by the evidence; (2) whether the court's charge on the subject of intoxication as it related to deliberation and premeditation was an adequate and correct one.

## I

Upon the People's own version of the occurrence, which we must assume was the one which was accepted by the jury, it seems clear to me that the evidence did not warrant a finding by the jury that premeditation and deliberation had been proved beyond a reasonable doubt.

We are not concerned here solely with the question of whether there was sufficient evidence to warrant submission of the charge of attempted murder in the first degree to the jury. We have the responsibility of dealing with the weight of the evidence as well as its legal sufficiency and we do not adequately discharge that responsibility simply by holding that there was a question of fact for the jury.

As the Court of Appeals said in *People* v. *Crum* (272 N. Y. 348, 350): '' A review of the facts means that we shall examine the evidence to determine whether in our judgment it has been sufficient to make out a case of murder beyond a reasonable doubt. We are obliged to weigh the evidence and form a conclusion as to the facts. It is not sufficient, as in most of the cases with us, to find evidence which presents a question of fact; it is necessary to go further before we can affirm a conviction and find that the evidence is of such weight and credibility as to convince us that the jury was justified in finding the defendant guilty beyond a reasonable doubt.''

The People's own version of the transaction indicates that the shooting of the sergeant by the defendant was an impulsive and spontaneous action, rather than the product of premeditation and deliberation. That the defendant was in a state of high mental and emotional excitment, due at least in part to intoxication, is unquestionable. The defendant's conduct was that of a man who had gone berserk. As the District Attorney himself argued, the defendant had engaged in a continuous course of violence from the time of the street fight at about 10:30 P.M., to the time of the shooting at about 11:15 P.M.

In his overwrought state, the defendant may well have conceived the idea of assaulting any policeman who came within range and the jury may well have been justified in finding an intention of that kind on the part of the defendant. But there is no basis for finding a preconceived plan on his part to obtain a weapon capable of causing death and to use it against one of the police officers. The defendant had no reason to suppose that a police officer would enter the cell with his gun exposed in a holster, the safety catch of which had been broken, and that it would be possible for him to pull the gun out of the holster. And there is no evidence that, at the time the defendant lunged at the sergeant, he made an effort to reach the holster or seize the gun. On the contrary, the evidence is that he seized the sergeant about the waist and proceeded to struggle with him. It was only in the course of the struggle that the belt on which the sergeant carried his holster swung around his body so that the holster came

forward and it became possible for the defendant to seize the gun. At that time, the sergeant had a headlock on the defendant, with his hands around the defendant's throat. It seems to me that the only reasonable inference is that, in seizing the gun at that time, the defendant acted instinctively, in an effort to break the hold of his adversary, without reflection or premeditation.

" Deliberation and premeditation imply the capacity at the time to think and reflect, sufficient volition to make a choice, and by the use of these powers, to refrain from doing a wrongful act " (*People* v. *Barberi,* 149 N. Y. 256, 267). Here clearly, the defendant was not in a condition to reflect and to make a choice as to whether to kill or not to kill and there is no justification for inferring that he did so reflect and made a choice to kill.

As Judge VANN said in *People* v. *Fiorentino* (197 N. Y. 560, 563): " He may have committed a serious crime, but whether he committed the most serious crime known to the law, depended not simply on his time to deliberate, but also on the controlling fact whether, with his mind inflamed by aggravating circumstances for which he was not responsible, he did deliberate and with coolness and premeditation shoot the deceased. It may well be that his mental condition did not permit deliberate action, which requires reflection and a decision to act, before action is taken." (See, also, *People* v. *Caruso,* 246 N. Y. 437.)

" The *Barberi, Fiorentino,* and *Caruso* cases, were, therefore, entirely correct in their emphasis on the exercise of the reasoning faculty as an essential of 'deliberate and premeditated design to effect death.' And in requiring that the actual state of mind of the offender and all the influences contributing to the actual mental condition be considered, the Court of Appeals was merely giving effect to the logical implications of a policy that was expressed in the statutes of 1873, 1881 and the Penal Law." (Communication and Study Relating to Homicide, 1937 Report of N. Y. Law Revision Commission, pp. 515, 574.)

As the Law Revision Commission study points out, " the subjective approach embodied in the *Caruso, Fiorentino,* and *Barberi* opinions " (p. 589) has, at times, been given inadequate attention but the authors of the study recommend that the principle laid down in those opinions should be followed in all cases, as the only way in which to make meaningful the distinction under the statute between murder in the first degree and murder in the second degree, and the only way in which to give the words " deliberation and premeditation " their natural and intended meaning (p. 602).

When we take into account the mental and emotional condition of the defendant, it is clear that there was no such exercise of the reasoning faculty as is required by the *Barberi, Fiorentino* and *Caruso* cases in order to constitute deliberation and premeditation.

The test was phrased by Chief Judge CARDOZO in *People* v. *Zackowitz* (254 N. Y. 192, 194–195) in slightly different language: '' At the trial the vital question was the defendant's state of mind at the moment of the homicide. Did he shoot with a deliberate and premeditated design to kill? Was he so inflamed by drink or by anger or by both combined that, though he knew the nature of his act, he was the prey to sudden impulse, the fury of the fleeting moment? ''

Even if we apply the '' sudden impulse '' test to this case strictly, it seems to me that the finding of premeditation and deliberation was not in accordance with the weight of the evidence. All the factors in the situation combined to produce a spontaneous impulse. The defendant was '' inflamed by drink [and] by anger '' and the police officer had seized him in a headlock and was pressing upon his windpipe. When the opportunity to reach the officer's gun presented itself, the defendant reacted instinctively. The act of shooting was thus an automatic response to the situation and not the result of a deliberate and premeditated design to effect death.

The only evidence of premeditation and deliberation relied upon by the People was (1) that three shots were fired, and (2) that the defendant had previously shouted threats to '' kill '' one of the policemen and to '' get '' the sergeant.

The firing of the shots in rapid succession is not sufficient to warrant a finding of premeditation and deliberation under the circumstances. An emotionally distraught person seizing the gun impulsively was just as likely to fire three times as to fire once. The impulse which caused him to seize the gun in the first place persisted throughout the episode and governed and controlled his actions. '' The attack seems to have been the instant effect of impulse. Nor does the fact that the stabbing followed the beginning of the attack by some time affect this conclusion. It was all one transaction under the peculiar facts of this case. If the assault was not deliberated or premeditated then neither was the infliction of the fatal wound '' (*People* v. *Caruso*, 246 N. Y. 437, 446, *supra*).

I do not believe that any serious weight can be given to the threats, accompanied by profanity, to '' kill '' one of the policemen or to '' get '' the sergeant. All this was patently a part of

what Sergeant Dunney himself characterized as "raving and ranting" on the part of the defendant. Under the circumstances, the word "kill" cannot be taken literally. It is unreasonable to infer that at the time the defendant was knocking his head against the walls of his cell and shouting profane curses at the policemen, he had actually conceived a design to effect the death of one of the policemen.

The defendant's counsel argues earnestly that the court should not have permitted the prosecution to introduce evidence of the prior assaults in the street fight and should have limited the presentation of the prosecution's case to the events beginning with the incarceration of the defendant in the cell. However, the defendant's counsel himself relied upon the earlier events to show the defendant's intoxication and his state of mind at the time of the episode in the cell. Furthermore, the defendant had raised the issue of self-defense and the proof of the prior assaults by the defendant, within a period of less than one hour before the shooting, bore directly upon that defense. The proof showed that the defendant had lashed out wildly against anyone who had come within range and that he was in a belligerent and aggressive frame of mind. The proof of the prior assaults therefore had substantial probative value in showing that the defendant was the aggressor and in rebutting his claim that he had acted in self-defense (cf. *United States* v. *Puff*, 211 F. 2d 171, certiorari denied 347 U. S. 963). The prosecution's proof of the prior episodes thus tended to establish that the defendant had initiated an unjustified assault upon the sergeant. But, by the same token, it undermined the prosecution's claim that the defendant had acted out of a premeditated and deliberate design to effect death. The prior assaults, while violent, did not indicate any murderous intent. They were rather the unthinking acts of an intoxicated man. The proof of the prior assaults thus supported the view that, in attacking the sergeant, the defendant acted impulsively, without any premeditated or deliberate design to effect death.

The charge here is attempted murder in the first degree. The test of the sufficiency of the evidence to support that charge is whether a conviction of murder in the first degree would have been sustainable if the victim had died as a result of the attack. I do not believe that any court passing upon the facts would allow a conviction of murder in the first degree to stand, if death had ensued, under the circumstances of this case.

## II

Apart from the question of the sufficiency of the evidence to establish premeditation and deliberation, there was a serious deficiency in the court's charge on that subject. One of the most important questions in the case was whether the defendant was so intoxicated as not to be able to formulate a deliberate and premeditated design to effect death. As the District Attorney himself states in his brief, one of the defendant's principal defenses upon the trial was " that he was so intoxicated he was not accountable for his actions ".

Since intoxication was a serious issue in the case, the court was under the duty of explaining fully to the jury the possible effect of intoxication upon the degree or grade of the defendant's criminal responsibility (*People* v. *Van Zandt*, 224 N. Y. 354). The trial court's charge on the subject of intoxication was both inadequate and misleading. The whole charge on this point consisted of two sentences. In discussing premeditation and deliberation, the court merely said: " The state of the Defendant with regard to possible intoxication can also be considered by you in determining his intent ". " However ", the court continued, " a person cannot deliberately drink himself out of reason and thereby absolve himself of responsibility under the law ".

The court thus left the jury with the impression that, if the defendant's intoxication was voluntary, he could not " absolve himself of responsibility under the law " for attempted murder in the first degree, even though the intoxication had been of such a nature as to render the defendant incapable of formulating a deliberate and premeditated design to effect death. This, in effect, took the issue of intoxication away from the jury since the defendant's intoxication was concededly voluntary.

The court's statement to the jury was in need of both amplification and clarification. It is true that voluntary intoxication is not a defense with respect to a crime requiring only a general criminal intent such as a simple assault, but if the crime charged requires proof of a specific criminal intent, voluntary intoxication rendering the accused incapable of formulating the required intent constitutes a partial defense to the charge and the charge must be accordingly reduced to a lower degree or grade of crime which does not require the specific intent (Penal Law, § 1220; *People* v. *Koerber*, 244 N. Y. 147). This is true, a fortiori, with respect to the crime of murder in the first degree, requiring not only a specific intent to kill but also a deliberate and premeditated design to effect death.

" By our statute deliberation and premeditation are necessary constituents of the crime of murder in the first degree, and if by reason of intoxication the jury should be of opinion that the deliberation or premeditation necessary to constitute murder in the first degree did not exist, the crime is reduced to a lower grade of murder, or in the absence of any intent to kill, then to manslaughter in some of its grades. The intoxication need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent. The jury should be instructed that if the intoxication had extended so far in its effects that the necessary intent, deliberation and premeditation were absent, the fact of such intoxication must be considered and a verdict rendered in accordance therewith." (*People* v. *Leonardi,* 143 N. Y. 360, 366.)

The defendant's counsel took exception to the court's charge in this language: " I will except to that part of your charge which stated that intoxication can be — *can* be, considered by you, the Jury, rather than *must* be considered by you, the Jury." This exception may not be wholly adequate to raise the point here made but the absence of an adequate exception is not fatal.

" On the question of murder in the first degree where the killing is committed from a deliberate and premeditated design to effect the death of the person killed (Penal Law, § 1044, subd. 1), it has been held that, when the case contains testimony which if believed might have led the jury to conclude that at the time of the shooting defendant was intoxicated to a greater or less degree, the question of intoxication should be presented and explained to the jury and, if the question is a serious one and such instructions are omitted, a judgment of conviction should be reversed even in the absence of a proper request by the counsel for the defendant. (People *v.* Van Zandt, 224 N. Y. 354.) " (*People* v. *Koerber, supra,* p. 150.)

The judgment of conviction should be reversed, on the law and the facts, and a new trial ordered.

BERGAN, J. (dissenting). When Patrolman Cunningham came to the police station cell of the defendant a few moments before Sergeant Dunney was shot, the defendant said to him: " Get out of here * * * or I'll kill one of you * * * policemen." When Sergeant Dunney came to the cell immediately before the shooting, the defendant said to him " Get out of here or I'll get you ". As Sergeant Dunney came into the cell the defendant immediately began to attack him, and in the struggle seized the

38 calibre revolver from the holster and shot, not one, but three successive bullets into his body. The jury could have taken this version of the disputed events. The firing of three bullets from such a gun requires repeated and sustained physical effort.

It may well be that the threat to '' kill '' a policeman if one came into his cell was a mere idle threat without then a known opportunity; and it may be reasonably argued that defendant would not expect that he would be able to get hold of a policeman's gun from a holster or have opportunity to use it.

But the plainly expressed purpose of the defendant to kill a policeman if one came into his cell could be taken as indicating the formation of an intent to do just that if he had the opportunity; and this added to the further threat in close sequence to '' get '' the sergeant when he came to the cell and the actual and successful seizure of the opportunity by getting hold of a deadly weapon and the firing of it enough times into the body certainly to effect death in the usual case could, all together, be taken as indicating the formation of a deliberate purpose to kill.

When this sequence of events can be argued reasonably one way or the other, the question of premeditation is for a jury. This all undoubtedly occurred in the intensity of great excitement and tension; but a deliberate intent to kill is murder in the first degree even if it is formed in an excited state of mind. Murder is not exclusively the product of mental coolness. The intensity of excitement and its effect on the deliberateness of purpose, when they are open questions, as they seem here to be, are for the jury under our traditional method of trial.

The Judge instructed the jury with accuracy and completeness the rules governing consideration of premeditation. The time, he charged in the words of a noted case, must be sufficient '' for some reflection or consideration upon the matter, for choice to kill or not to kill and for the formation of a definite purpose to kill ''. He adverted to the celerity with which the human mind might sometimes operate to form such a purpose.

This is a fair statement of the rule. He added in context that the '' state of the defendant '' with regard to '' possible intoxication can also be considered by you in determining his intent ''. This left it open to the jury to weigh into consideration on the question of premeditation whether intoxication, if it existed, did adversely affect the capacity of defendant to premeditate and to form an intent to kill.

The Judge then made a general observation that '' a person cannot deliberately drink himself out of reason and thereby

absolve himself of responsibility under the law ''. This observation is correct enough in some situations; but it is not apt in relation to the formation of a purpose or intent; for if a man is too drunk to deliberate on killing he cannot be convicted of murder in the first degree even though his intoxication was willful.

But such a statement as this would be harmful to the extent which would warrant a reversal only if there were an issue between the parties whether defendant was or was not too intoxicated to form a purpose to kill. There was no such issue here. The issue was merely whether the defendant perpetrated an unprovoked assault in pursuance of a formed intention to kill, as the People claim; or whether, as defendant claims, he was protecting himself against assault and the gun went off accidentally.

He does not argue, as I read this record, that he was not guilty because he was too drunk to form an intent on which guilt could rest; he argues, rather, that he was not guilty because he was protecting his person from a beating by a policeman with a gun and the gun went off in the struggle without any intent or purpose. In such a case the intoxication aspect of the law has no direct application and it need not have been charged or considered at all by the jury.

This becomes more manifest when, by examination of the thorough brief presented by counsel on appeal, no complaint whatever is raised in respect of the adequacy or accuracy of the charge in this respect. Counsel on the trial submitted a large number of requests in writing to the Judge to aid in instructing the jury; none dealt, as far as the record discloses, with the need in this case to instruct the jury on the subject of intoxication. The exception that the defendant took to the Judge's charge on intoxication was not that the charge was improper in this general sentence about deliberate intoxication; but rather that `` intoxication '' is a subject that `` must '' be considered by the jury, rather than a subject that `` can '' be considered.

It is reasonable to think that at the end of the whole charge this is the way counsel, who had listened to the charge, and the Judge, who had given it, understood it. The error, not touching any vital point in issue between the parties, must be treated by us as unsubstantial.

The judgment should be affirmed.

IMRIE, J., concurs with HALPERN, J.; FOSTER, P. J., concurs for reversal, on the law, solely on the ground that the charge of the trial court on the subject of intoxication was inadequate and

erroneous.  BERGAN, J., dissents and votes to affirm in an opinion in which ZELLER, J., concurs.

Judgment of conviction reversed, on the law, and a new trial ordered.

Settle form of the order on notice.  [See *post*, p. 972.]